THE JOYCE-KOEBEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4267.  Promulgated March 4, 1927.

1. The taxpayer purchased merchandise in England, the purchase price to be paid in pounds sterling.  *Held*, that the cost of such goods must be arrived at by reducing sterling to dollars at the rate of exchange prevailing on the date of purchase of the goods.

2. Where merchandise was purchased abroad in pounds sterling on credit and paid for at a time when the rate of exchange was different from that prevailing at the date of purchase, *held*, that the credit transaction was an investment or speculation in foreign exchange and that a taxable gain or deductible loss occurred when payment for the goods was made.

3. In the circumstances set out above, the gain or loss from the exchange transaction is the difference between the cost of the goods at the date of purchase, measured by the purchase price in pounds sterling reduced to dollars at the rate of exchange prevailing on the date of purchase, and the cost in dollars of the exchange remitted in payment.

4. Because of improper accounting, the taxpayer included profits of prior years in its profit and loss account for 1920, and in its tax return for 1920.  The income of the taxpayer for the taxable year involved is to be adjusted to exclude profits of prior years so included.

*Hugh Satterlee, Esq.,* and *Walter N. Seligsberg, Esq.,* for the petitioner.

*A. H. Murray, Esq., Harry Herskowitz, Esq.,* and *Thomas P. Dudley, Jr., Esq.,* for the respondent.

The petitioner seeks a redetermination of a deficiency of $476.36 in income and profits tax for 1920 asserted by the Commissioner, arising from an adjustment in its invested capital. The petitioner alleges that its net income for 1920, used in the computation of the deficiency in question, was overstated by $76,202.36, arising from accounting errors made upon its books and erroneously used by it in making its income-tax return.

### FINDINGS OF FACT.

The petitioner is a Delaware corporation with its principal office in New York City. Since 1918 it has been engaged in the business of importing and selling uncut diamonds for commercial purposes.

The Commissioner determined the petitioner's net income for 1920 to be $105,413.52, which is the net profit for 1920 shown by it upon its books in its profit and loss account after proper adjustment has been made for tax-exempt income, and is the amount reflected in the income and profits-tax return filed by the petitioner.

During 1918, 1919, and 1920, the bulk of petitioner's merchandise was purchased in London on the basis of pounds sterling. Payment therefor was made in pounds sterling purchased in New York. During these years all invoices for goods purchased were entered in the purchase record and in accounts payable in dollars at the normal rate of exchange for the pound sterling, regardless of the prevailing rate at the date of purchase, and all remittances of pounds sterling were entered in the cash book and in accounts payable at the cost in dollars of the exchange remitted to London.

Prior to closing the books for 1920, it was discovered by an officer or accountant of petitioner that under this method of accounting the balances due English concerns, as reflected on the books of the petitioner, did not agree with the balance due in pounds sterling. The accountant accordingly prepared statements in which he recomputed cost of goods sold upon the basis of the exchange prevailing at the date of each purchase, and also computed gain or loss due to difference in the exchange rate between the date of purchase and date of payment. Upon this basis he determined that the difference between the invoice price of goods as shown on the books and as computed upon the prevailing rate of exchange at date of invoice for all purchases made in 1918, 1919, and 1920, was $208,892.64. He also computed a gain of $28,831.53 in exchange for those years, arising from the difference between the rate prevailing at the date of invoice of goods and at the date of payment of the accounts. As of December 31, 1920, an entry was made on the books of the petitioner decreasing cost of goods purchased by $208,892.64 and decreasing accounts payable to the respective London creditors by the same

amount. This amount was carried into the profit and loss account of the petitioner for the year 1920. At the same time entries were made showing a profit of $28,831.53 on foreign exchange, which was carried with the profit and loss account for 1920. Both of these amounts are included in their entirety as income in the petitioner's 1920 tax return and in the income used by the Commissioner in determining the deficiency.

During 1920 petitioner purchased goods in London at a total cost of £133,434-5-1. It entered this amount in its purchases at $649,357.73, converting pounds sterling into dollars at the normal rate of exchange. Converted into dollars at the rate of exchange prevailing at the date of purchase, the invoice price for such goods was $477,264.59.

On January 1, 1920, petitioner was indebted to London creditors in the amount of £42,983-9-5 for goods purchased. Reduced to dollars at the rate of exchange prevailing at the time the indebtedness was created by the purchase of goods, this indebtedness was $192,310.31. During 1920 petitioner purchased goods at a total cost of £133,434-5-1, or $477,264.59 at prevailing rates of exchange. At the close of 1920 there was unpaid £14,452-2-8, representing an indebtedness of $50,303.36. During 1920 the petitioner purchased £161,965-11-10 sterling at a cost to it of $599,334.42, and with such sterling paid credits which it had established in the purchase of goods costing it $619,271.54, on the basis of converting sterling to dollars at the rate of exchange prevailing at the date the goods were bought and credit established.                                        •

### OPINION.

PHILLIPS: Petitioner does not question the adjustment of its invested capital which gave rise to the deficiency determined by the Commissioner. It contends that it has discovered accounting errors in its original return whereby its income was overstated by $76,202.36.

The petitioner purchased the greater part of its goods in London on the basis of the pound sterling. From time to time it purchased sterling exchange with which to pay its London creditors. Purchases were entered in its purchase account and in accounts payable at the normal rate of exchange of the pound sterling, while payments were entered in the cash book and in accounts payable at the cost of exchange remitted. In this manner, over a period of three years, the accounts of the company were distorted. This was discovered by an accountant at the close of 1920 and entries were made to bring the books into a condition where they reflected the true situation. However, in carrying these entries into the profit and loss statement, no attempt was made to allocate the amounts to the

years in which the distortions occurred, but the entire amount was charged into 1920 profit, thereby overstating the profit from the operations of that year.

To determine the proper method to be followed in computing income in such a situation as we have here, the transactions must be analyzed. The company purchases goods, the purchase price being payable in pounds sterling. It may pay for those goods at the time of purchase by buying sterling at the then prevailing rate, or it may choose to establish a credit and pay the account later. In any event, the cost of the goods must be arrived at by reducing sterling to dollars at the rate of exchange prevailing on the date of purchase. *Appeal of Bernuth Lembcke Co.*, 1 B. T. A. 1051.

If the company, instead of making payment at that time, makes the purchase on credit, it is investing or speculating in foreign exchange. It may derive a profit or sustain a loss on the exchange operation, but the cost of the goods to it is not affected by such profit or loss. We therefore conclude that the proper method of accounting is to include purchases in the accounts at the rate of exchange prevailing at the date of purchase and to account for any profit or loss in the payment therefor as a separate transaction. Such was our decision in *Appeal of Bernuth Lembcke Co., supra*, where exchange was first purchased and later used to purchase goods. We there held that upon the purchase of the goods a loss resulted from the investment in exchange and that the cost of the goods was the value of the exchange at the date the goods were purchased.

During 1920 the petitioner's total purchases in sterling were £133,434-5-1. It entered this amount in its purchases at $649,357.73, at the normal rate of exchange. Actual cost, at the exchange rate prevailing at the various dates of purchase, was $477,264.59. Purchases for 1920 were therefore originally overstated by $172,093.14, the difference between the amount entered as cost and that which should have been entered. The correcting entry made by the petitioner, $208,892.64, included errors for 1918 and 1919 as well as 1920. To the extent that it corrects errors of prior years this entry has no place in the computation of 1920 income. The cost of goods purchased in 1920, and consequently the income for 1920, has been overstated in this entry by $36,799.50, the difference between the correcting entry which was made and that which should have been made.

At the close of 1920 the petitioner's accountant also adjusted the books to reflect the profit derived from trading in exchange and credited $28,831.53 to profit for 1920 on this account. This amount was returned as income for that year. It represents the accountant's computation of the gain derived from exchange transactions in 1918, 1919, and 1920. So far as it includes gain derived from remittances

made in 1918 and 1919 it has no place in the computation of 1920 income.

The gain realized in 1920 upon exchange transactions completed in that year by the remittance of sterling, as set forth in the findings of fact, was $19,947.12. Income for 1920 has therefore been overstated by $8,884.41, the difference between the gain reported as realized and that realized in fact.

It is the contention of the petitioner that the net income for the year can be reflected correctly only by converting balances of accounts payable in sterling at the end of each year into dollars at the rate of exchange prevailing at the end of each year, thus in effect making an inventory item of such accounts. This contention has already been decided adversely to the contentions of the petitioner in the *Appeal of Roessel & Co., Ltd.*, 2 B. T. A. 1141, where it was held that gain or loss on investments or transactions in foreign exchange were to be reported in the year in which the transaction is completed by payment. The computation of the gain set out above has been made upon that basis.

*Decision will be entered on 20 days' notice, under Rule 50.*