THE B. F. GOODRICH COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106126. Promulgated May 11, 1943.

*F. C. Leslie, Esq.*, for the petitioner.
*T. F. Callahan, Esq.*, for the respondent.

OPINION.

Murdock, *Judge:* The Commissioner determined a deficiency of $27,310.89 in income tax for the calendar year 1936. One of the adjustments made by him in determining the deficiency was the disallowance of a deduction of $88,977.16 which he held was interest on bonds accruing in January 1937 and, therefore, not a proper deduction for 1936. The petitioner assigns that action as error. Another adjustment which the Commissioner made in determining the deficiency was the exclusion from income as nontaxable of an amount of $136,970.23 described as "French bank loan transaction." The Commissioner has moved to increase the deficiency on the ground that he erred in excluding this latter item from income. The facts have been stipulated and the stipulation is adopted as the findings of fact.

The petitioner filed its income tax return for the taxable year with the collector of internal revenue at Cleveland, Ohio. That return was on an accrual basis.

The petitioner issued $25,000,000 of its 6½ percent mortgage bonds in 1922. The bonds were to mature on July 1, 1947. The Bankers Trust Co. was trustee. The mortgage indenture was recorded. The indenture provided that all outstanding bonds could be called for redemption by the petitioner upon the first day of any month upon payment of the principal with accrued interest to the date of call and a premium of 7 percent, provided the petitioner should give notice of the call at least 60 days prior to the date fixed for redemption.

The petitioner decided to issue new bonds at a 4¼ percent rate and to redeem the remaining outstanding 6½ percent bonds above described. It gave the required notice in December 1936 that the 6½ percent bonds were called for redemption on February 1, 1937, and the holders could receive immediate payment of the full redemption price, including principal, premium, and interest to February 1, 1937, upon surrender of the bonds at any time prior to January 1, 1937, with January 1, 1937, and subsequent coupons attached. The petitioner deposited funds with the trustee on December 1, 1936, for redemption of the bonds. $16,421,500 of the amount deposited represented the face amount of the outstanding bonds, and the remaining amount deposited covered the 7 percent premium and interest on the bonds to February 1, 1937. The trustee on that same day marked the indenture as follows: "The condition of this Mortgage and Deed of Trust has been complied with and is hereby satisfied and discharged." The mortgage was satisfied of record on December 4, 1936. All registered holders of bonds were notified by mail on December 4 of the terms of redemption of the bonds. The new bond issue was placed on the market and offered for sale shortly after December 1, 1936.

All but $5,821,500 face amount of the 6½ percent bonds had been paid and canceled by the close of business on December 31, 1936.

The petitioner entered a charge of $177,954.32 in its interest account on the 6½ percent mortgage bonds on November 25, 1936, and the account was closed by a charge to profit and loss on December 31, 1936. The item of $177,954.32 represented interest on the bonds for December 1936 and January 1937. The petitioner claimed the above item as a deduction for interest on its income tax return for 1936. The Commissioner, in determining the deficiency, disallowed $88,977.16 thereof, the equivalent of interest on the bonds for January 1937.

The petitioner contends that the item of $88,977.16 which the Commissioner has disallowed as a deduction for 1936 was not in fact a prepayment of interest but was, like the 7 percent premium, an ordinary and necessary expense which the petitioner was called upon to incur and pay in 1936 in carrying on its business. It gives various definitions of interest and claims that this item does not meet any of them. It says:

No interest was paid by the Petitioner after November 30, 1936, on the bonds redeemed by it on December 1, 1936, nor was any interest accrued on them, for there was no debt upon which interest could accrue, be calculated, or attach.

*    *    *    *    *    *    *

The obligation of the Petitioner to its bondholders became due at some time prior to the actual payment on December 1, 1936, the date on which the debt was extinguished. On December 1, 1936, the mortgage and trust deed securing the payment of these bonds became satisfied and discharged. The claim of the Trustee for itself and the bondholders which it represented was extinguished and completely satisfied when the payment of the full amount due under the indenture was made. (Section 2, Article II, Exhibit A to the Stipulation of Fact, pages 48 and 49).

These statements or arguments of the petitioner are not supported by the facts. The published notices of redemption were dated December 2, 1936. The notices were not mailed or published until that date and later. They stated that the petitioner had:

*    *    *    elected to redeem and pay and will redeem and pay on February 1, 1937, all of the above-mentioned bonds then outstanding, at one hundred seven per cent. (107%) of the principal amount thereof, together with accrued interest on said bonds to said date, in accordance with the terms of said bonds and said Indenture, and that all of said bonds are called for redemption on said date. *    *    * Interest on said bonds will cease to accrue on and after February 1, 1937.

The notices also stated that holders could receive immediate payment in full by prompt surrender of their bonds before the due date.

Obviously the bonds were not redeemed on December 1, 1936. The period of the loan was not terminated on that date. The obligation of the petitioner to its bondholders could not possibly have become "due at some date prior    *    *    *    to December 1, 1936." The deposit of funds

with the trustee on December 1, 1936, and the satisfaction of the mortgage did not terminate the period of the loan. The mortgage was to secure the loan. When cash was paid by the debtor into the hands of the trustee, that cash was sufficient security and the mortgage was no longer necessary. But the loan was not thereby satisfied. It could not have been satisfied under the terms of the indenture prior to the due date unless, prior to that date, the bondholders had actually surrendered their bonds for cancellation and redemption and had received the payments to which they were entitled. The petitioner cites no authority for its contention that there was no debt after December 1, 1936, and we know of none. It refers to section 2 of the mortgage indenture, but that section does not support its contention. The section provides that if proper funds have been deposited and due notice given, certain things shall happen "on such redemption date" so that the bondholders shall not be entitled to any benefits thereafter except their right to receive their proportionate part of the funds deposited with the trustee upon surrender of their bonds. The debt continued to exist after December 1, 1936, and a part continued to exist after December 31, 1936.

Neither is the contention of the respondent on this point entirely sound. He argues that the entire $88,977.16 was a prepayment of interest for January 1937 which accrued during that month and not earlier. He also argues that none of the loan was terminated in December 1936. A taxpayer on an accrual basis can not accelerate the accrual of interest by payment in advance, but must accrue it as the liability to pay is incurred over the period of the loan. *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566; *Street & Smith Publications, Inc.* v. *United States*, 38 Fed. Supp. 461. If the entire debt on the 6½ percent mortgage bonds had remained outstanding as an obligation of the petitioner until February 1, 1937, or until some earlier date in 1937, the action of the Commissioner in disallowing the deduction of $88,977.16 would have been proper. However, it appears that the debtor paid to the trustee in December 1936 the entire amount necessary to redeem all outstanding bonds; the mortgage was satisfied of record; and the holders of $10,600,000 face amount of the bonds surrendered their bonds for redemption and cancellation in 1936 and received their payment in full in that year. The debtor-creditor relationship between the petitioner and the holders of the $10,600,000 face amount of bonds ceased in 1936, the period of the loan was terminated, and interest could not thereafter accrue in regard to that particular part of this indebtedness. The rule that interest accrues ratably is not to be carried to the extreme of having the accrual continue after the debt has been paid and canceled.

Bonds in the face amount of $5,821,500 were still outstanding in the hands of the bondholders after the close of 1936. The debtor-

creditor relationship between the petitioner and the holders of those bonds had not been completely terminated in 1936. The period of the loan as to those bonds continued into January 1937. While the petitioner had paid to the trustee the funds necessary to retire those bonds, the bondholders had not seen fit to surrender their bonds for cancellation and redemption and had not received payment of either the principal or interest due them. They were within their rights. Consequently, it was not proper for the petitioner to accrue the January interest on those bonds in 1936 and take a deduction for that interest on its income tax return for that year. The determination of the Commissioner was correct in regard to the January interest on bonds in the face amount of $5,821,500, but was incorrect as to the interest on the remainder of the bonds. The latter was a proper deduction for 1936 whether as interest or as an ordinary and necessary expense.

"Colombes-Goodrich, Paris, France, is a French corporation which was a wholly-owned or controlled subsidiary of 'The International B. F. Goodrich Corporation,' a wholly-owned subsidiary of Petitioner." The petitioner borrowed 11,000,000 francs from a Paris bank in November 1933 and gave its note to the bank in the amount of 11,000,000 francs. It then loaned the same 11,000,000 francs to Colombes-Goodrich. The petitioner purchased 11,000,000 francs on October 7, 1936, for $514,162.50 in United States currency and repaid its loan to the French bank. Colombes-Goodrich, which was in operation during the taxable year and thereafter, has not repaid to the petitioner any part of the 11,000,000 francs which it borrowed in 1933. The petitioner recorded the 1933 borrowing from the French bank by debiting cash in bank and crediting notes payable with $651,132.73, which was the value of 11,000,000 francs in United States currency at the time of the transaction in November 1933. The petitioner, when it paid off its debt to the French bank in 1936, recorded the transaction by debiting "Notes payable—French bank" $651,132.73, crediting cash $514,162.50, and crediting as a realized profit on foreign exchange the difference of $136,970.23. It reported this profit on its income tax return for 1936, but later persuaded the Commissioner to exclude it from income in his determination of the deficiency.

Apparently the Commissioner, after carefully considering this question, realized that the bookkeeping entries did not correctly reflect what had happened, and he agreed with the petitioner that no profit had been realized. Nevertheless, his counsel in this proceeding has again raised the question by amended answer. He tries to show a profit by hooking together the transaction which the petitioner had with the French bank and the one it has with Colombes-Goodrich. His argument is that the petitioner, by the expenditure of $514,162.50 in United States currency, acquired an account receivable from Co-

lombes-Goodrich worth $651,132.73 and, therefore, was enriched by the difference between those two figures in 1936 when "a completed transaction took place." He says "this result was obtained regardless of the manner in which the account was set up on the books of the petitioner."

This reasoning is unsound. The petitioner never acquired an account receivable from Colombes-Goodrich in the amount of $651,-132.73. The stipulation is specific that the petitioner loaned Colombes-Goodrich 11,000,000 francs and thereafter "Colombes-Goodrich owed the petitioner 11,000,000 francs." Likewise, the petitioner owed the French bank 11,000,000 francs. Both debts were for the return of francs and were never expressed in terms of American currency. Thus, the debt which Colombes-Goodrich owed the petitioner never exceeded in amount or value the debt which the petitioner owed the French bank. The amount due the petitioner from Colombes-Goodrich was worth no more than $514,162.50 at the time the petitioner paid off its note to the French bank. Furthermore, the loan to Colombes-Goodrich was a separate transaction from the borrowing at the French bank. Perhaps the Colombes-Goodrich account may have a basis for gain or loss in the hands of the petitioner of $514,162.50. Cf. *Bernuth-Lembcke Co.*, 1 B. T. A. 1051. However, that transaction has not been closed, and the question of whether it will result in gain or loss is one which can not be decided at this time. Counsel for the petitioner argues that, even though there was a profit from the transaction with the bank, nevertheless, the case of *Bowers* v. *Kerbaugh Empire Co.*, 271 U. S. 170, applies, since the money was loaned to Colombes-Goodrich was not operating successfully and the prospects ment because, as just stated, the transaction with Colombes-Goodrich has not been closed and the facts do not show that it will be closed at a loss. However, it may be observed against the Commissioner that Colombes-Goodrich was not operating successfully and the prospects of its paying its debts in full were getting no brighter. The respondent has failed to advance any theory upon which the deficiency could be increased.

Furthermore, the petitioner did not realize income for Federal income tax purposes as a result of its transaction with the French bank. despite the fact that it recorded the transaction in such a way as to show a profit of $136,970.23. Bookkeeping entries are not determinative of whether or not income has been realized and can not of themselves create a profit where in fact none is realized. This petitioner borrowed 11,000,000 francs in 1933 and paid them back in 1936 at a cost to it in American currency of $514,162.50. A mere borrowing and returning of property does not result in taxable gain. *General Motors Corporation*, 35 B. T. A. 523, 526; settled on appeal, see 106 Fed. (2d) 995. Cf. *North American Mortgage Co.*, 18 B. T. A. 418. It must be

remembered that this debt was at all times expressed in terms of francs, not in terms of United States currency. Cf. *Frederick Vietor & Achelis* v. *Salt's Textile Manufacturing Co.*, 26 Fed. (2d) 249. The petitioner did not buy 11,000,000 French francs for $514,162.50 and then sell them for $651,132.73. Neither did it exchange them for property having a value of the latter amount. Cf. *Bernuth-Lembcke Co., supra*. Foreign currency may be treated as property for income tax purposes, and transactions in it may result in gain or loss just as may transactions in any other property. *Bernuth-Lembcke Co., supra; Joyce Koebel Co.*. 6 B. T. A. 403; *James A. Wheatley*, 8 B. T. A. 1246. Cf. *Louis Roessel & Co., Ltd.*, 2 B. T. A. 1141; *Credit & Investment Corporation*, 47 B. T. A. 673, 680. But here the transaction with the French bank did not amount to a taxable transaction consisting of an acquisition of property at one price and a disposition at another. Suppose the petitioner had borrowed 11 bars of metal with an obligation to return their equivalent rather than their money value, and, after using that particular metal, the petitioner had spent some of its United States funds to obtain 11 new bars which it turned over to the lender in satisfaction of its obligation. It would seem clear that no real gain or loss could result from the mere borrowing and return of fungible property. The present is a parallel case.

The petitioner in recording this transaction with the French bank debited $651,132.73 to cash in bank and credited the same amount to notes payable. It closed the transaction by crediting $514,162.50 to cash, debiting $651,132.73 to "Notes payable—French bank," and crediting $136,970.23 to profit. Perhaps it was necessary for it to make some such entries in keeping its books, but the various entries involving the amount of $651,132.73 and the one recording a profit of $136,970.23 were fictitious and not in any sense a true reflection of what happened. The Commissioner, apparently recognizing this, agreed that the bookkeeping formality was not controlling in reporting income and he does not now insist upon adherence to these bookkeeping entries. The petitioner never had $651,132.73 in bank and it did not have notes payable in that amount. On the contrary, it had 11,000,000 French francs in bank and it had an outstanding note which obligated it to return 11,-000,000 French francs to the French bank. Had it recorded these transactions using the French monetary system instead of our own, it would have recorded no profit. Since mere bookkeeping entries can not create a profit, they should not be used as a basis for taxing this petitioner with a profit which it never realized. We know of no theory upon which the $136,970.23 may be included in income for 1936.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

TURNER, *J.*, concurs only in the result on the first point.

DISNEY, *J.*, dissenting: Neither petitioner nor respondent advanced the theory upon which the majority opinion is based, as to the first issue. The petitioner relies upon payment to the trustee on December 1, 1936, as base for its argument that the item in question is ordinary and necessary business expense of 1936, and not interest. In the petitioner's reply brief we read:

* * * It is admitted that the regulations hold that where a taxpayer keeps books of account on an accrual basis, he must take "interest" deduction in the period in which the liability to pay interest accrues, regardless of when payment is actually made. This rule, however, does not apply to ordinary and necessary business expense. The rule in connection with such expense is that deductions and credits must be taken for the taxable year in which paid or accrued, or paid or incurred.

* * * On December 1, 1936, the mortgage and trust deed securing the payment of these bonds became satisfied and discharged. The claim of the Trustee for itself and the bondholders which it represented was extinguished and completely satisfied when the payment of the full amount due under the indenture was made. * * *

The majority opinion disagrees with that view, yet to a large extent allows the deduction. It is apparent that the petitioner's present view is inconsistent with the repeated provisions of the deed of trust, with the view taken by the petitioner in issuing the notices of redemption, with its books, and with its income tax return, throughout all of which the item here involved was treated as accrued interest. Even in the petition filed, it is not alleged that the item was not interest, or that it was ordinary and necessary business expense. While a term used is not determinative, it should not "be assumed that the parties have given an erroneous name to their transaction." *Pacific Southwest Realty Co.*, 45 B. T. A. 426, 436. In *Cary* v. *Savings Union*, 89 U. S. 38, the question was whether money was a dividend or interest. In holding it was a dividend, the Court said:

* * * The parties themselves so understood it, for they gave it that name in the contracts, executed when the depositors made their deposits. They stipulated for the payment of dividends and not interest.

See also *Commissioner* v. *Schmoll Fils Associated, Inc.*, 110 Fed. (2d) 611; *Charles N. Spratt*, 43 B. T. A. 503; *Angelus Building & Investment Co.*, 20 B. T. A. 667. In *Perrine & Buckelew, Inc.*, 32 B. T. A. 168, we said:

* * * But it is equally well settled that the terms used and the treatment accorded to the instrument by its creator can not be lightly set aside. * * *

On brief, the petitioner admits:

If the bonds had not become due through agreement between the Trustee and the Petitioner and by action of the Petitioner pursuant to such agreement, then of course, the money could have been used in Petitioner's business, or at least it would have been available for use. * * *

In my opinion, under the petitioner's option to pay up to February 1, 1937, the whole principal was in fact available up to that date and could have been used in petitioner's business, therefore demonstrating that here an accrual basis taxpayer is asking deduction merely because of making available funds for payment in the taxable year. There is clear analogy here to constructive receipt of income to one who has it in his power to use funds, though he does not avail himself of the privilege. The petitioner should not be heard to say that there is no connection between January 1937 and the item here considered, when the date of payment was altogether optional with it. So far as necessity of indebtedness as a requisite is concerned, we have held that indebtedness is not, under all circumstances, prerequisite to the allowance of deduction for interest. In *New McDermott, Inc.*, 44 B. T. A. 1035, we allowed deduction for interest on a mortgage upon property when purchased by the taxpayer, though the mortgage indebtedness was not assumed, where there was relation between income and "interest" involved. In *Columbia River Paper Mills*, 43 B. T. A. 104; affd., 126 Fed. (2d) 1009, we held that a taxpayer on an accrual basis was entitled to deduction for interest accrued during the taxable year upon obligations outstanding, even though the obligations were not outstanding until after the date from which interest was accrued. Of the statute allowing deduction of interest accrued, we said: "It does not say that the indebtedness upon which interest has accrued and become a liability of the taxpayer must be outstanding during the entire interest accrual period   *   *   *.   The requirement of the statute is, in our opinion, clearly met if the interest accrual period falls within the taxable year, and the payment of the interest becomes a fixed liability of such year." Here the interest accrual period and the liability for payment were both fixed for 1937.

In fact, however, nonuse of principal during January 1937 is not shown, but on the contrary, use thereof affirmatively appears. The petitioner did get the use of the principal, apparently to some very large extent, in January, and we find compliance with the letter of the definition of interest; for, upon January 1, 1937, only $10,600,000 out of $16,421,500 principal amount of bonds had been presented for payment and upon the difference, which under the majority view had not been paid, the petitioner continued to have the right to draw interest through January, to the extent that bonds remained unpresented, under the terms of the trust deed, section 2 of article II. I think it can not validly be said that during that month, through which petitioner had paid for and kept that valuable right, there was no use of the principal, and no proper correlation between income earned and interest accrued. Through January the petitioner had not lost the use of principal, but still had, out at interest, that portion of the prin-

cipal which was uncalled for by the bondholders. The average daily balance during that month would no doubt amount to a very large sum. I can conceive no more effective use of money borrowed than to have it out at interest. That portion, and the income therefrom was the direct result of paying "interest," covering that month, for only by so paying did the petitioner acquire the right to interest on deposits during January. It is true that after $10,600,000 had been taken down by bondholders, up to January 1, 1937, the interest for January 1937 on the balance was at a higher rate, but it was clearly still interest, merely being payment for the use of about $6,000,000, instead of the earlier $16,000,000. Had the petitioner not had the pecuniarily valuable right to draw interest on its unused deposits, it might well have not made the deposit until February 1, 1937. One on an accrual basis, should, under primary principles sustained by authorities too numerous to require citation, accrue interest in the period when it affects income, in order that fair reflection of income result. To neglect interest received for January 1937 is to reflect inaccurately petitioner's 1937 income. Plainly, petitioner's income for January 1937 was affected and increased by the privilege it had of drawing interest on the balance of principal sum, a right purchased by payment of interest for that month, and income for January 1937 is thus seen to be directly the result of the item here being considered. The importance of this situation is shown by the careful provision therefor in the trust deed, that the petitioner should receive interest to the extent bonds were not deposited, "and the holders of the bonds shall have no claim thereon." It has long been recognized, under *United States* v. *Anderson*, 269 U. S. 422, that accrual should take place in the period covering the events which fix the amount and liability to pay. "When the obligation to pay an amount becomes fixed, the obligation accrues." *Helvering* v. *Russian Finance & Construction Co.*, 77 Fed. (2d) 324. In this matter, neither amount nor liability to pay a business expense was fixed in 1936. Both had been fixed in 1922. Nothing as to January 1937 interest occurred in 1936, except the acceleration of maturity and payment of interest to February 1, 1937. Until January 1937, liability for interest for that month had not accrued. For lack of payment in full, the bond issue was in fact not retired until 1937. Nothing remains to support the taxpayer's view, except mere making funds available for payment. Unless one on the accrual basis may accrue at will, merely by depositing in advance, funds for payment of his debt (yet continuing to draw interest on unpaid amounts), the petitioner here may not accrue. I respectfully dissent.