Columbia Sand & Gravel Company, Inc. v. Commissioner.
Columbia Sand & Gravel Co. v. Commissioner
Docket No. 28302.
United States Tax Court
1952 Tax Ct. Memo LEXIS 120; 11 T.C.M. (CCH) 794; T.C.M. (RIA) 52232; July 31, 1952
David R. Shelton, Esq., Munsey Bldg., Washington, D.C., and Aaron L. Ford, Esq., for the petitioner. Paul E. Waring, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioner assails respondent's determination of deficiencies in income tax for 1947 of $172.50, and in personal holding company surtax for 1947 and 1948 in the amounts of $4,030.34 and $3,825.11, respectively. All of those amounts are in dispute. An issue as to a small interest income item has apparently been abandoned by petitioner. Petitioner claims an overpayment in income tax for 1947 in the *121 amount of $954.38. The principal issue is whether ordinary or capital loss resulted from petitioner's receipt of Canadian dollars upon the maturity of Canadian bonds and its conversion of the Canadian funds into American dollars. Some of the facts were stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner, a corporation with principal office in Wilmington, Delaware, filed its tax returns for the periods involved with the collector of internal revenue for the district of Delaware. Petitioner was organized under the laws of Delaware on November 15, 1939. It is successor to and transferee of a Canadian corporation which was a foreign personal holding company known as The Smoot Sand & Gravel Corp., of Canada, Ltd., hereinafter called petitioner's predecessor. In 1939 petitioner exchanged its stock for all of its predecessor's assets and assumed all liabilities of the latter corporation, which was subsequently dissolved. This transfer was carried out pursuant to a plan of reorganization with the prior written approval of respondent. The reorganization as approved by respondent eliminated the recognition of gain or loss and required petitioner *122 to use its predecessor's basis. The requested approval of the reorganization was granted by respondent in rulings dated September 25, 1939, and November 13, 1939. Petitioner's certificate of incorporation describes the nature of the business to be transacted as a sand, gravel and stone business, and dredging, contracting, forwarding, towing and lighterage. The certificate provides that petitioner shall have power to acquire, hold, manage, and sell any real or personal property which may be advantageous. The certificate further provides that petitioner shall have power to acquire, hold, and dispose of stock of corporations of any state or foreign country, or securities of any state, territory or possession of the United States or of any foreign country. The certificate provides also that petitioner may enter into and perform any contracts convenient for its business, and that it may conduct its business anywhere in the United States or in foreign countries. On March 19, 1937, petitioner's predecessor purchased Hydroelectric Power Commission of Ontario bonds, having a par value of 50,000 Canadian dollars, at a cost of 49,226.87 United States dollars which were then equal to 49,000 *123 Canadian dollars. The bonds were payable solely in Canadian dollars. They matured on April 1, 1947, and were paid off to petitioner at their full par value. The Canadian funds were left with the Agency Bank of Montreal, New York City, with instructions to hold them pending an increase in the rate of exchange. The Canadian dollars could have been sold by petitioner at the time of their receipt. The only purpose for holding them was to convert them into United States dollars at the best price obtainable. On September 11, 1947, the 50,000 Canadian dollars were converted by petitioner at the then rate of exchange into 45,000 United States dollars which were promptly deposited in petitioner's bank account in the United States. Petitioner incurred in 1947 a loss of $4,226.87 ($49,226.87 minus $45,000) measured in United States dollars. On April 2, 1939, petitioner's predecessor purchased Province of Ontario bonds having a par value of 94,000 Canadian dollars at a cost of 93,219.51 United States dollars which were then equal to 92,825 Canadian dollars. The bonds were payable solely in Canadian dollars. They matured on April 15, 1948, and were paid off to petitioner at their full par value *124 of 94,000 Canadian dollars. On December 22, 1948, petitioner converted the 94,000 Canadian dollars, at the then rate of exchange, into 86,715 United States dollars which were promptly deposited in petitioner's bank account in the United States. Petitioner incurred a loss in 1948 of $6,504.51 ($93,219.51 minus $86,715) measured in United States dollars. The free rate of exchange available to petitioner, as shown by the publications of the Federal Reserve Board, shows that Canadian dollar could be converted into the following amount of American currency on the following dates: $.925625 on April 1, 1947, and $.903671 on April 15, 1948. During 1947 and 1948 petitioner was a personal holding company and its only source of income was from interest on securities owned by it. Petitioner has never purchased Canadian dollars for resale. All Canadian dollars which it has acquired have originated solely from the liquidation of Canadian bonds at maturity. It has always sold its Canadian funds within the calendar year of their receipt. During the years 1942, 1943, 1944, and 1946, on nine defferent occasions, petitioner received the proceeds of Canadian bonds paid off in Canadian dollars. In *125 each instance petitioner sold the Canadian dollars and recorded the resulting loss on its books after the sale. Petitioner has never recorded any gain or loss on its books with respect to Canadian funds received upon the maturity of Canadian bonds until after the sale of the Canadian funds. The practice was followed with respect to the transactions in controversy during the taxable years here involved. Petitioner's books have never reflected any transactions in terms of Canadian dollars, and all gains or losses have been recorded in United States dollars. It has been petitioner's practice to distribute all of its earnings and profits during each calendar year. During 1947 and 1948 petitioner paid out all of its earnings and profits. Petitioner's corporation income tax return for 1947 reported total income of $8,377.71 consisting of interest of $8,631.64 and a loss of $253.93, and it showed, after a deduction of $47 for taxes, net income of $8,330.71. It reported a long-term capital loss from the disposition of Hydroelectric Power Commission of Ontario bonds of $4,226.87 which was not claimed as a deduction, no other capital gains or losses being reported for the year. Its personal *126 holding company return for that year reported a capital loss arising out of the above transaction in the amount of $4,226.87, and it deducted that amount from net income in the computation of subchapter A net income. Petitioner's corporation income tax return for 1948 reported total income of $8,989.11, consisting of interest of $9,253.60 and a loss of $264.49, and it showed, after a deduction of $47 for taxes, net income of $8,942.11. It reported a long-term capital loss from the disposition of Province of Ontario bonds of $6,504.51 which was not claimed as a deduction, no other capital gains or losses being reported for the year. Its personal holding company return for that year reported a capital loss arising out of the above transaction of $6,504.51, and it deducted that amount from net income in the computation of subchapter A net income. Respondent's notice of deficiency determined, among other matters, that: "Deductions claimed of $4,226.87 and $6,504.51 for the years 1947 and 1948, respectively, are not allowable in the computation of personal holding company surtax net income. The amounts were in fact capital losses and as such are not allowable deductions for either income *127 tax or personal holding company surtax." Respecting the year 1947, respondent's notice determined with regard to an interest income item of $750 that: "1947 interest on Province of Ontario bonds is taxable in 1947 instead of 1948 as reported." Petitioner's claim for refund of income for 1947 in the amount of $954.38 is based upon the following ground: "That a loss of $4,226.87 incurred by taxpayer in 1947 upon maturity of its Hydroelectric Power Commission of Ontario bonds and/or the conversion of the proceeds thereof from Canadian to United States money is properly allowable as a deduction for 1947." Opinion While petitioner originally took the position that its foreign exchange losses were capital in nature, and deducted them as such on its personal holding company returns, though not for normal income tax purposes, it is now apparently accepted by both parties that as capital losses they are not deductible to any extent. See sections 117(d), 505, Internal Revenue Code. Petitioner's present contention, opposed by repondent, is that the losses in question were not capital but ordinary losses and hence deductible from both corporate and personal holding *128 company income. We are unable to concur in petitioner's position. Certainly the bonds acquired with the Canadian exchange were capital assets, not held for sale to customers, and any loss on their sale or redemption consequently a capital loss. It is a necessary implication from the facts that the purchase and sale of the Canadian dollars was undertaken solely to transfer funds to and from Canada in connection with the loans and their repayment in that country, and that the stipulated loss was arithmetically the exact dollars paid out and received back for those equivalent of the difference in United States capital assets. Except for short and insignificant periods, petitioner owned no Canadian exchange, and in any event it would be impossible to find that petitioner has shown such regular and consistent dealings in foreign exchange as to warrant the conclusion that its loss on Canadian dollars was an ordinary consequence of its regular trade or business. The loss did occur while petitioner retained capital assets consisting of the bonds. Proper accounting in ordinary mercantile transactions would require cost and proceeds to be computed at the prevailing rate of exchange on the *129 date of purchase and sale. Bernuth Lembcke Co., Inc., 1 B.T.A. 1051; The Joyce-Koebel Co., 6 B.T.A. 403. The difference would be the measure of the gain or loss, and in effect that is what the parties have stipulated. But the character of that loss must be determined as in other situations by the underlying nature of the transaction. B. F. Goodrich Co., 1 T.C. 1098; North American Mortgage Co., 18 B.T.A. 418; cf. Foundation Co., 14 T.C. 1333. Since the purchase and redemption of the bonds was a capital matter, section 117, Internal Revenue Code, petitioners entire loss was a capital loss, and no part is deductible in computing ordinary income or personal holding company surtax. It seems obvious nevertheless that this was not a "bond premium" in the sense employed in section 125, Internal Revenue Code. The amount "payable on maturity" there referred to [1] is that called for by the language of the instrument itself, see Commissioner v. Korell, 339 U.S. 619, not some fortuitous figure resulting from the accident of foreign exchange fluctuation. Otherwise, it *130 would be impossible to apply the concept of the section which anticipates annual amortization [2] over the life of the security or at least until it becomes subject to call. We find no error in respondent's action. Decision will be entered for the respondent. Footnotes
1. "(b) Amortizable Bond Premium. - "(1) Amount of Bond Premium. - For the purposes of paragraph (2), the amount of bond premium, in the case of the holder of any bond, shall be determined with reference to the amount of the basis (for determining loss on sale or exchange) of such bonds, and with reference to the amount payable on maturity or on earlier call date * * *." ↩
2. Internal Revenue Code, section 125: "(b) Amortizable Bond Premium. - * * *
"(2) Amount Amortizable. - The amortizable bond premium of the taxable year shall be the amount of the bond premium attributable to such year."↩