SEABOARD FINANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30554.   Promulgated May 21, 1953.

*Austin H. Peck, Jr., Esq.*, for the petitioner.
*R. E. Maiden, Jr., Esq.*, for the respondent.

414

Opper, *Judge:* Although the facts and particularly the details of the arrangement giving rise to the present controversy are complicated and the contentions of the parties cover a wide range of discussion, the central problem seems to us not so involved as might at first appear. Petitioner committed itself to purchase stock of a Canadian corporation which for convenience we call the Campbell stock, guaranteeing to the seller the sum of $2,214,969.94 in Canadian dollars. This amount was to be realized first, out of the sale of 100,000 of petitioner's shares issued to the seller, but to be sold by petitioner, and secondly, from petitioner's agreement to make good to the seller any deficit. As security petitioner was required to deposit in escrow $2,200,000 (Canadian) as well as the shares of its stock, pending completion of the details of sale. Petitioner purchased the $2,200,000 Canadian for $2,000,000 United States almost immediately after the execution of the agreement. Some 7 months later, after its stock had been marketed for an amount substantially less than the guaranteed price, petitioner authorized the purchaser to apply the deposit to the purchase price.

In the meantime Canadian exchange had risen in value to a point where petitioner claims it realized a gain on the Canadian dollars of the difference, $189,000, between the exchange rate at the time they were purchased and at the time they were turned over to the seller of the Campbell stock. The reason for the peculiar contention by the taxpayer that it has realized a gain contrary to respondent's determination that it has not, is petitioner's position that the gain having taken place in Canada it constitutes the basis for a credit against its United States tax which apparently both parties agree would result in a computation beneficial to petitioner.

We find it unnecessary to pass upon what respondent refers to as his primary argument. It is that the doctrine of such cases as *Bernuth Lembcke Co.*, 1 B. T. A. 1051, acq. IV–2 C. B. 3, and *Joyce-Koebel Co.*, 6 B. T. A. 403, acq. VI–2 C. B. 4, is not applicable to isolated or single transactions involving foreign exchange. See *American Pad & Textile Co.*, 16 T. C. 1304. Even if the doctrine of those cases were applicable to these facts, we think petitioner could not succeed.

The basic principle of those cases may be summarized by a quotation from *Bernuth Lembcke Co., supra*, 1054:

The creosote oil could not be inventoried  \*  \*  \*  at more than its actual cost *and the cost was in terms of the exchange at the date of purchase.*  \*  \*  \* [Emphasis added.]

Applying that concept here, the cost of the Campbell stock would be the $2,214,969.94 Canadian converted into United States dollars at the rate of exchange prevailing on the date of purchase, March 27, 1946.

As we have said, at approximately the same date and at no different rate of exchange, petitioner purchased $2,200,000 (Canadian) which it used in connection with the purchase.

The remaining analysis must be stated in terms of hypotheses since both parties deal with the subject in alternatives not necessarily consistent with each other. But on any approach the result is a dilemma from which petitioner cannot escape. If, on the one hand, the Canadian dollars were actually used to pay the purchase price, then no gain or loss on foreign exchange could have resulted [1] in view of the fact that the exchange rate on the date of purchase of the Campbell stock and of the Canadian dollars was apparently identical. If on the other hand the use of the Canadian dollars which actually took place was, as petitioner contends, a mere short cut for a longer operation which would have involved the conversion of the Canadian dollars into American funds and the purchase of Canadian dollars at that time out of the proceeds of the sale of petitioner's stock, then, if we apply the doctrine of *Bernuth-Lembcke Co., supra*, any gain on the purchase and sale of the Canadian dollars would be offset by the loss sustained between the purchase price of the Campbell stock converted into dollars at the date of purchase and the amount of American dollars required to purchase the same number of Canadian dollars when payment was subsequently made. See *James A. Wheatley*, 8 B. T. A. 1246, acq. VIII C. B. 34.

Petitioner attempts, it is true, to escape from this difficulty by the contention "that there is not an inflexible rule of application to these foreign exchange cases. Certainly * * * where petitioner could not determine its cost until certain events occurred it would be error to rule that the cost was determined on March 27, 1946." With deference, this appears to us to be an argument in a circle. We assume that under the principles stated petitioner could and should have determined its cost as of March 27 by the mere process of computing from the fixed amount of $2,214,969.94 Canadian at the then rate of exchange its cost in American dollars. In the end result and regardless of what occurred on the marketing of the stock, those Canadian dollars were required to be paid. If the cases in question are applicable petitioner could have computed its cost. And they therefore cannot be held inapplicable on the ground that petitioner could not compute its cost.

There is a third possibility that on account of the complicated nature of the transaction, it might be contended that petitioner merely borrowed the funds with which the Canadian dollars were secured,

---

[1] There is a difference of $14,969.94 (Canadian) not accounted for by these transactions. No point is made of this amount, however; the record fails to show in what manner it was discharged or at what point the complicated accounts between petitioner and the seller took it into effect. We accordingly disregard this comparatively small element both for failure of proof and because it appears not to be in controversy.

and later repaid them; or that petitioner in effect loaned the Canadian dollars to the seller pending the completion of the details of purchase; but in either event no gain or loss would have taken place. *North American Mortgage Co.*, 18 B. T. A. 418; see *B. F. Goodrich*, 1 T. C. 1098; *American Pad & Textile Co.*, *supra*.

Viewing the matter practically and eliminating as far as possible the complications of detail, petitioner was in fact no better off or worse off by reason of its transactions in Canadian currency. Whether we deal with the subject as a matter of form or of substance, it accordingly follows that no gain was realized and that the deficiency was correctly determined.

*Decision will be entered for the respondent.*

