**WEBSTER INVESTORS, INC.** (Successor by Merger to Webster Investment Company, Inc), Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 317, Docket 26751.

United States Court of Appeals Second Circuit.

Argued May 11, 1961.

Decided June 9, 1961.

David G. Sacks, New York City (Simpson, Thacher & Bartlett, and J. Daniel Mahoney, New York City, on the brief), for petitioner.

Earl J. Silbert, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Dept. of Justice, Washington, D. C., and Harry

Baum, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before FRIENDLY and SMITH, Circuit Judges, and WATKINS, District Judge.*

WATKINS, District Judge.

This is a petition for review of a decision of the Tax Court of the United States. The case involves the amount of a capital loss for income tax purposes for the calendar year 1954, and deals with a transaction which took place in 1952. Two questions are presented by the petition for review:

1. Was the Tax Court's finding of the 1916 value of a cigar brand name, "Henrietta," sold by taxpayer in 1952 at a claimed loss, clearly erroneous?

2. Did the Tax Court abuse its discretion in denying taxpayer's motions, presented after the hearing, which raised the alternative argument that taxpayer sustained a capital loss in 1952 on a sale of intangibles other than the trade name "Henrietta"?

We feel that the answer to both of the above questions should be in the negative, and that the decision of the Tax Court should be affirmed.

Webster Investors, Inc., was organized in 1953. It is successor, by a merger in 1956, to Webster Investment Company, Inc., which, in turn, had been organized as the Ellis Tobacco Company in 1911. Webster Investors, Inc., and its corporate predecessors are hereinafter referred to as taxpayer.

From about 1850 to February 3, 1916, a partnership, Otto Eisenlohr & Bros., and its predecessors, manufactured and sold cigars in Philadelphia and elsewhere. The partnership prospered, and by 1916, it had twenty-two cigar factories, a number of stripping warehouses, and about twenty-five office employees. The great growth of the business was in part due to the use of distributors who had well defined territorial rights. The partnership had excellent management and the Eisenlohr name was well known in the trade. Brand names are very important in the tobacco business. The principal brand names of the partnership were "Cinco" and "Henrietta." Cinco cigars produced about 90 per cent of the partnership sales and Henrietta about 5 per cent in 1916.

On February 3, 1916, taxpayer succeeded to the partnership business. In exchange for all of the partnership assets, taxpayer issued 30,000 shares of 7 per cent cumulative preferred stock, par value $100 per share, and 60,000 shares of common stock, par value $100 per share. The fair market value of the tangible assets acquired by taxpayer from the partnership on February 3, 1916, was $4,000,000. In addition to the physical assets, taxpayer took over the entire organization of the partnership, including its manufacturing and selling personnel. The brand names, Cinco and Henrietta, constituted a substantial portion of the intangible assets, the total fair market value of which was not less than $3,074,907. These values are not seriously challenged by either party. The partnership had first begun to manufacture Henrietta cigars in 1891. Except for a period of about a year during World War II, taxpayer continuously manufactured Henriettas from February 3, 1916, until March 1, 1952. On the latter date, taxpayer sold all its right, title, and interest in and to the brand name Henrietta for $700.

The taxpayer ascribed a fair market value of $150,000 to Henrietta on February 3, 1916, and claimed a capital loss deduction for the difference between that figure and the amount ($700) for which it sold the Henrietta brand name in 1952. The capital loss claimed was $149,300. In fixing the fair market value of $150,000, taxpayer urged that substantially all of the $3,000,000 value of the intangibles or good will transferred to the partnership in 1916 was ascribable

* United States District Judge for the Northern and Southern Districts of West Virginia, sitting by designation.

to the brand names Cinco and Henrietta, and, since Henrietta's sales produced about 5 per cent of the business, this brand name had a value of 5 per cent of the intangibles, or $150,000. Taxpayer sought to carry over this claimed capital loss to the calendar year 1954. The Commissioner of Internal Revenue determined that the fair market value of the brand name Henrietta on February 3, 1916, was zero, denied the loss carry-over deduction, and assessed a deficiency. The Tax Court, however, split the difference and found as an ultimate fact that the fair market value of the brand name Henrietta on February 3, 1916, was $75,-000, and, accordingly, used that figure for computing the amount of the capital loss carry-over deduction.

After the Tax Court rendered its opinion, the taxpayer filed motions to amend its petition "to conform the pleadings to the proof," to revise the decision of the Tax Court, and for reconsideration of the Tax Court's opinion. In each of these motions, taxpayer urged that if all or virtually all of the intangible value of the Company was not properly ascribable to the trade names, then they had suffered a loss on these other factors in 1952, when the business was sold, and that they were nevertheless entitled to the larger loss claimed. The Tax Court denied the motions, and this appeal followed.

█ The law is clear that this court must allow the finding of fact of the Tax Court to stand unless it is clearly erroneous, and the reviewing court is "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co. et al., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746; Commissioner v. Duberstein et ux., 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

█ We feel that there is sufficient evidence in the record to justify the Tax Court in finding that not all of the intangibles or good will of the tobacco business on February 3, 1916, was attributable to the two trade names, Cinco and Henrietta. No allocation of values was made by the parties among the intangibles in the transaction transferring the partnership assets to taxpayer. There is evidence that some value should attach to the business as a going concern, including evidence of an established business, trade outlets, favorable factory locations, efficient management, and the Eisenlohr name.

█ As to the finding of $75,000 certainty is here impossible. The determination of fair market value is frequently a difficult task, but one that must be accomplished. This is especially true where, as here, the value must be fixed as of forty years ago, and the pertinent records are inadequate. Commissioner v. Thompson, 3 Cir., 222 F.2d 893; cf. Cohan v. Commissioner, 2 Cir., 39 F.2d 540. We do not think that it is necessary for specific testimony to relate specifically to the precise figure selected by the lower court. Guggenheim v. Helvering, 2 Cir., 117 F.2d 469, 472, certiorari denied Guggenheim's Estate v. Commissioner, 314 U.S. 621, 62 S.Ct. 66, 86 L.Ed. 499. Here the Tax Court's determination was within the range of suggested valuations. When this case was argued in this court, Judge FRIENDLY commented that the Tax Court seemed to have followed the "ancient precedent established by a man whose name has become synonymous with wisdom." In so doing, we do not feel it was clearly erroneous.

As to taxpayer's second contention, that a capital loss was sustained on intangibles other than brand names in 1952, we feel that it would be a futile act to remand to the Tax Court. Taxpayer's tax return for 1954 did not assert that any good will was sold in 1952, other than as this good will was embodied in the brand names. Taxpayer's pleadings in the Tax Court did not assert this alternative claim; instead, its case rested on the contention that the brand names constituted substantially all of the intangibles sold. Neither did the proof before the Tax Court demonstrate that the Henrietta business constituted such a

separate portion of Webster's total business as to permit the segregation and transfer of a portion of Webster's good will other than that embodied in the brand names, as the regulations require. To the contrary, the evidence shows that the other elements of good will, particularly the Eisenlohr name, the trade outlets, and favorable factory locations, were not distributable on a pro-rata basis throughout the business. For example, there was testimony that the average consumer of Cinco cigars knew the Eisenlohr name, but that the average consumer of Henrietta was not familiar with the Eisenlohr name. The trade outlets for the two brands differed in location and manner of distribution. Cinco cigars were distributed by salesmen, distributors, and jobbers, whereas Henriettas were sold primarily in the Philadelphia, Baltimore and Washington areas, without the elaborate distribution facilities for Cinco. There is obviously no basis for saying that five percent of the value of the Eisenlohr name, trade outlets, and factory locations, as items of good will, should be attributable to Henrietta just because Henrietta produced five percent of the total business. Furthermore, there is no evidence relating to the value of these various items of good will. The alternative argument, that if the brand names did not constitute all of the intangibles sold, there was then a capital loss on the remaining intangibles, was first put forward by brief in the Tax Court. Then, after the Tax Court had filed its opinion, taxpayer moved the Tax Court to put this alternative allegation in the pleadings, and to have the Tax Court consider it in its decision and opinion. These motions were denied.

Taxpayer did not move the Tax Court to allow additional evidence concerning its alternative argument, and it does not ask this court to remand for the taking of additional evidence. To the contrary, it states in its brief:

"The record now contains all the proof necessary to decide the alternative argument on its merits and to compute the overpayment of 1954 tax."

In order for the taxpayer to establish a capital loss for those other intangibles, it would be necessary for it to show that they were sold in 1952. In Grace Bros. v. Commissioner of Internal Revenue, 9 Cir., 173 F.2d 170, it was held that good will has no existence except in connection with a going business, and that it cannot be separated from the going business to which it is incident. The record not only does not show such sale of a going business, but it does not show that the sale of the brand name Henrietta resulted in the sale of these other elements of good will, because Henrietta did not constitute an independent segment of taxpayer's business to which the other elements of good will separately attached. Taxpayer, in this case, did not sell its principal brand name of Cinco, but instead only gave a five-year license to sell and an option to purchase to the transferee. It did not sell its two cigar factories, but leased them for a period of two years, with a year-to-year tenancy provided for the following years. It did not sell all of its cigar machinery, or its four warehouses, but instead leased two warehouses for one year, and the other two for two years. No provision at all was made concerning the transfer of trade outlets or key employees to the buyer, except for the one provision that for five years the buyer would have the right to consult taxpayer's president on matters pertaining to the cigar business. On the basis of these facts, it is difficult to understand how taxpayer can claim that it went out of the cigar business in 1952, and therefore disposed of its good will.

There is no evidence in the present record that would permit the Tax Court to make a finding favorable to the taxpayer on the latter's alternative contention; on the contrary, the evidence really negates such alternative contention. The record contains no evidence which would justify a finding that (1) all of the good will was sold

in 1952; or (2) some portion of this good will may be ascribed to Henrietta. Moreover, the record clearly does not contain the data that would enable a determination whether, if there were a sale of the good will in 1952, it resulted in a gain or loss, or how much. Thus, a remand by this court directing the Tax Court to consider the alternative contention would be futile.

Affirmed.