PEERLESS INVESTMENT COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1819–70.   Filed August 28, 1972.

*Henry T. Sanders*, for the petitioner.
*Allan E. Lang*, for the respondent.

#### OPINION

SIMPSON, *Judge:* The respondent determined a deficiency of $106,489.51 in the petitioner's 1965 Federal income tax. The issue to be decided is whether the petitioner acquired an item of "goodwill" when it purchased the stock of a corporation and paid an amount in excess of the fair market value of the underlying assests.

All of the facts were stipulated, and those facts are so found.

The petitioner, Peerless Investment Co., is a corporation, incorporated in 1940 under the laws of the State of Illinois, which had its principal office in Chicago, Ill., at the time the petition was filed in this case. It duly filed its 1965 Federal income tax return with the district director of internal revenue, Chicago, Ill.

Prior to 1964, the petitioner was engaged in the processing of freshly slaughtered hogs. It did not own the facilities necessary for slaughtering the hogs; it used the facilities owned by Peerless Packing

Co. (Packing). On December 8, 1949, the board of directors of the petitioner held a meeting at which the acquisition of control of the facilities of Packing was discussed.

Commencing June 2, 1950, the petitioner purchased all the stock of Packing for $1,093,617. The payment for such stock was completed in 1959. The net book value of the tangible assets of Packing on December 31, 1950, was $856,004.30. The adjusted basis for Federal income taxes was also $856,004.30, and the fair market value of the tangible assets of Packing approximately equaled that amount.

The December 31, 1950, balance sheet of Packing did not reflect goodwill as an asset. Furthermore from 1950 to 1963, Packing and the petitioner filed separate Federal income tax returns, and during this period, goodwill was not reflected as an asset on the Schedule L balance sheets of either company. However, goodwill of $237,612.70, the difference between the purchase price of the stock and the net book value of the assets, was reflected on the December 31, 1951, consolidated balance sheet of the petitioner and Packing.

On December 28, 1963, Packing was merged into the petitioner. The plan of merger provided that all the outstanding stock of Packing be canceled, that all of the assets of Packing be transferred to the petitioner, and that the petitioner assume all the liabilities of Packing. In accounting for the merger on its books, the petitioner debited goodwill $237,612.70, and on its Federal income tax returns for 1964, 1965, and 1966, the petitioner listed goodwill in the amount of $237,612.70 on the Schedule L balance sheet.

On December 31, 1966, the petitioner sold the assets which it had used to slaughter and process hogs to the Penn Packing Co. for $1,000,-000. After December 31, 1966, the petitioner was not engaged in the business of processing or slaughtering hogs. On its 1966 Federal income tax return, the petitioner included goodwill with a basis of $237,-612.70 as an asset which it sold to the Penn Packing Co. and claimed a $135,455.78 loss on the sale. The respondent determined that any goodwill involved in the sale had no basis for Federal income tax purposes and correspondingly reduced the net operating loss carryback to 1965.

We must decide whether the petitioner acquired an item of goodwill when it purchased the stock of Packing in 1950. The petitioner contends that when it purchased such stock, it also acquired an intangible asset, and that such asset cost $237,612.70, being the excess of the purchase price over the fair market value of the tangible assets of Packing. It further contends that its basis in the intangible asset was its cost and that such asset was sold or abandoned in 1966.

The respondent argues that in 1950 the petitioner purchased only one asset, the stock of Packing, and that any goodwill which was trans-

ferred to the petitioner in 1963 had a basis of zero for Federal income tax purposes. The petitioner has conceded in its brief that any goodwill which was transferred to it in the 1963 merger had a basis of zero for Federal income tax purposes. Sec. 334(b) (1), I.R.C. 1954.

It is stipulated that the petitioner acquired all of the stock of Packing for $1,093,617. Thus, the purchase price of the stock was in excess of the fair market value of the tangible assets of Packing. However, such fact does not lead us to the petitioner's conclusion that the purchase price represented the purchase of two things: stock and an intangible asset. Rather, it leads us to the conclusion that the petitioner puchased stock and that the value of such stock reflected the value of both the tangible and intangible assets of Packing.

A somewhat analogous problem was before this Court in the case of *Howard Construction, Inc.*, 43 T.C. 343 (1964). In that case, the petitioner corporation claimed that it purchased all of the stock of another corporation at a price in excess of the value of the tangible assets of that corporation and that such excess represented the purchase of an intangible asset, the cost of which the petitioner was entitled to amortize. As in the present case, there was no indication that the stock was purchased for the purpose of obtaining the assets of the subsidiary in a liquidation distribution. The Court said that the petitioner had purchased stock, not assets, and that, therefore, there was no asset acquired the cost of which could be amortized. Similarly, in the present case, the petitioner purchased stock and not assets.

The petitioner contends that its book entries show that it acquired both stock and an intangible asset in 1950. However, the book entries do not convincingly support the petitioner's position. There are no book entries at all in evidence concerning the actual sale, and on its Federal income tax returns from 1950 to 1963, the petitioner never recorded goodwill on its Schedule L balance sheet. Goodwill was listed as an asset on the consolidated balance sheet of the petitioner and Packing in 1951, but such fact does not show that goodwill was an asset of the petitioner. In that year, neither company listed goodwill as an asset on its Federal income tax return, and there is no indication of how each treated the asset on its books. Similarly, even though goodwill was listed as an asset by the petitioner on its Schedule L attached to its 1964 and later returns, such fact does not establish that the petitioner acquired the item in 1950—the item may have been acquired as a result of the merger in 1963.

Even if the book entries did support the petitioner, it is obvious that they cannot change the nature of the transaction which they allegedly reflect. See, e.g., *B. F. Goodrich Co.*, 1 T.C. 1098 (1943). It is not contended that the petitioner should be considered as having purchased

any of Packing's assets other than goodwill (see *Kimbell-Diamond Milling Co.*, 14 T.C. 74 (1950), affirmed per curiam 187 F. 2d 718 (C.A. 5, 1951), certiorari denied 342 U.S. 827 (1951)), and no authority has been cited for recognizing a transfer of goodwill where the other assets of the corporation are not transferred and such corporation continues its business. Indeed, where a corporation continues its business, goodwill remains its asset, because goodwill is incident to an ongoing business, and cannot be transferred unless the business is tranferred. *Webster Investors, Inc.* v. *Commissioner*, 291 F. 2d 192 (C.A. 2, 1961), affirming a Memorandum Opinion of this Court; cf. *Redman L. Turner*, 47 T.C. 355 (1967); *The Pevely Dairy Co.*, 1 B.T.A. 385 (1925). Packing continued its business for 13 years. Accordingly, we hold that no goodwill was transferred in the 1950 stock sale, and that the petitioner had no basis in goodwill for Federal income tax purposes in 1966.

We realize that as a result of our decision in this case, the petitioner's investment in the stock of Packing will not be recognized as basis for tax purposes. However, it appears to be generally understood that such a result is unavoidable under the provisions of sections 332 and 334(b), I.R.C. 1954, and the circumstances of this case. See Bittker & Eustice, "Complete Liquidations and Related Problems," 26 Tax L. Rev. 217 (1971).

*Decision will be entered for the respondent.*