UNITED STATES PLAYING CARD CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19305. Promulgated March 20, 1929.

*R. Kemp Slaughter, Esq.*, and *Hugh C. Bickford, Esq.*, for the petitioner.

*Stanley Suydam, Esq.*, and *O. J. Tall, Esq.*, for the respondent.

976

## OPINION.

TRAMMELL: The first issue for consideration here is whether the respondent erred in amortizing or prorating so-called commissions and selling expenses over the life of certain gold notes issued by the petitioner in 1921. In that year the petitioner issued three series of "8 per cent Serial Debenture Gold Notes" in the total amount of $800,000 pursuant to the terms of the contract set out in our findings of fact above.

The petitioner claimed as a deduction from income for 1921 the amount of $40,400, consisting of $40,000 alleged to have been paid to the bankers as commissions for selling the notes, and $400 representing the cost of documentary stamps. The respondent disallowed the deduction, prorated the amount over the life of the notes, and allowed a deduction from 1921 income of $8,206.25 as properly pertaining to said year. The petitioner kept its books of account upon an accrual basis.

It may be noted that there is no controversy raised regarding the correctness of the respondent's method of computation in prorating the amount of the claimed deduction. The issue relates solely to whether the petitioner is entitled to deduct the whole amount from

its gross income for 1921, or whether the amount should be amortized over the life of the notes.

We will consider first the item of $400, representing cost of documentary stamps. The Revenue Act of 1921, provides as follows:

Sec. 234. (a) That in computing the net income of a corporation * * * there shall be allowed as deductions:

\* \* \* \* \* \* \*

(3) Taxes paid or accrued within the taxable year (with certain exceptions not material in this proceeding).

Thus, in the case of a corporation, all taxes either paid or accrued within the taxable year, save only those which are specifically excepted by the statute, are deductible from the gross income for such year, and the exceptions do not embrace stamp taxes. There is no other condition or limitation placed upon such deductions, and it is our opinion, therefore, that the $400 stamp tax, which was both accrued and paid by the petitioner in 1921, is deductible from the gross income of that year. The respondent erred in prorating this amount.

The petitioner also contends that it is entitled to a deduction from 1921 income of the whole amount of the $40,000, which it asserts was paid to the bankers as a commission for selling its notes. This contention is predicated on the theory that the said amount was paid to the bankers by the petitioner as compensation for personal services rendered, and represents an ordinary and necessary expense of carrying on its business in 1921. This position, we think, is untenable.

Under the contract, the material provisions of which are set out in our findings of fact, the bankers agreed to "undertake to sell said notes * * * for the Company, at a price which shall net the Company par, less a commission of five per cent (5%) which the Company agrees to pay the Bankers for their services."

But the bankers also agreed "to make payments against deliveries of notes, of maturities designated by them, as follows: $300,000 on April 1, 1921, $250,000 on July 1, 1921, $250,000 on October 1, 1921."

The petitioner issued its notes in the total amount of $800,000 on the dates and in the amounts specified, and on the respective dates received from the bank cash equal to the par value thereof, and on the same dates paid to the bank by check a so-called commission of 5 per cent on each issue of notes.

The record before us does not disclose that the bankers ever at any time sold the notes for the petitioner; in fact, we are not informed what disposition was made of the notes after the petitioner delivered them to the bank, received from the bank the par value thereof in cash, and at the same time paid to the bank the so-called commission of 5 per cent.

Under the terms of the contract, the rights of the petitioner were confined to receiving from the bankers the par value of the notes, less the so-called commission of 5 per cent. If the bankers thereafter retained the notes instead of selling them, there is nothing in the quoted provisions of the contract which would give the petitioner a right to complain. If the bankers had thereafter sold the notes for more than par, there is no provision requiring payment of the surplus to the petitioner, or if the notes had been sold at less than par, the bankers had no contract right to require the petitioner to bear the loss.

These considerations, in our opinion, fairly justify the construction that the contract in question was in fact a contract of purchase and sale, whereby the petitioner agreed to issue and sell to the bankers, and the bankers agreed to purchase, certain notes at 95 per cent of par. The so-called commission, then, was substantially and in effect discount, and must be treated essentially in the same manner as bond discount.

In our findings of fact, above, we have referred to the item of $40,000 as " so-called commission " for the reason that the contract provided for the payment of a " commission," and in the stipulated facts, which we have substantially adopted in our findings of fact, the parties referred to said item as " commission." However, it is a well established principle of law that the name by which an instrument or transaction is denominated is not controlling in determining its true character. Thus, interest is not changed into a dividend by calling it a dividend, or *vice versa*, and a mortgage creditor although denominated a " preferred stockholder " is a mortgage creditor nevertheless. *Bolinger Franklin Lumber Co.*, 7 B. T. A. 402–405. And the discount at which bonds or notes are sold can not be changed into a commission for personal services merely by calling it such.

Where a corporation keeps its books upon an accrual basis, as did the petitioner in this case, and sells its own bonds at a discount, we have held that the discount is in the nature of deferred interest, and, in order to reflect the true net income, the discount must be amortized over the life of the bonds and the portion allocable to each year deducted from the gross income for such year.

In *Chicago, Rock Island & Pacific Railway Co.*, 13 B. T. A. 988, at page 1031, we said:

The true income of the company can be reflected only when the discount is spread over the life of the bonds. The most material element in determining the contract rate of interest, that is, whether the bonds shall be sold at par or at a premium or discount, is time. Thus no one would consider the proposition that he pay a premium for bonds payable at once nor would one issue bonds at a discount which are due and collectible the day they are issued. Since time is such a vital element in determining premium and discount, it is difficult to perceive why this element should not be taken into consideration

in determining taxable income—why time should not be used as a divisor in order to allocate to each period of time that part of the discount which is greater or less by reason of time.

Since the item of $40,000 in controversy in this proceeding represents discount, it follows that the action of the respondent in amortizing or prorating said amount over the life of the notes must be approved. This case is distinguishable from *Olinger Corporation*, 9 B. T. A. 170, in that in this case we have held that the amount paid, which was called commission, was not in fact commission, while in that case, the question was the deductibility of commissions paid.

The second issue presented here is whether petitioner's invested capital for 1921 should be reduced by the amount of certain New York State franchise taxes and license fees paid in 1922 and 1923 for the years 1919 and 1920. The facts show that during the year 1923 the petitioner paid a franchise tax amounting to $13,114.77, applicable to its fiscal year ended October 31, 1919, and a license fee of $1,404.98, applicable also to its fiscal year ended in 1919. In the year 1922 the petitioner paid a New York State franchise tax amounting to $2,079.59, applicable to the fiscal year ended October 31, 1920.

Since the petitioner kept its books by the accrual method, these liabilities of the years 1919 and 1920 should have been accrued thereon prior to the beginning of the taxable year 1921. The respondent conceded that the petitioner's invested capital for 1921 should be reduced by the said amounts paid in 1922 and 1923 for taxes which accrued during the years 1919 and 1920, if the record disclosed that the petitioner's invested capital for 1919 and 1920 as computed by the respondent, included earned surplus equal at least to the amounts involved. Thereafter this fact was stipulated.

Accordingly, in computing the invested capital for 1921, surplus should be reduced by the said amount of $16,599.34. *United States Trust Co. of New York*, 13 B. T. A. 1074.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK: I dissent from a part of the prevailing opinion in this case. In my opinion the $40,000 did not represent bond discount, and the question pertaining to this item was therefore not adequately disposed of by the prevailing opinion.

GREEN agrees with the dissent.