LYNDELL E. AND BERNICE C. LAY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3922–76.     Filed December 12, 1977.

*Byron M. Eiseman, Jr.,* and *Lewis H. Mathis,* for the petitioners.
*Michael J. O'Brien,* for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the year 1971 in the amount of $12,749.33. Petitioner-husband is a limited partner in two partnerships that each constructed and operated a section 236 housing project under the National Housing Act. At issue is whether certain financing fees paid by these two accrual method partnerships are deductible as ordinary and necessary business expenses under section 162[1] or as interest under section 163 in

---

[1]All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

the year of their respective accruals. Some concessions have been made by the petitioners.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by reference and are found accordingly.

Lyndell E. Lay (hereinafter referred to as petitioner) and Bernice C. Lay resided in North Little Rock, Ark., at the time they filed their petition in this case. Their joint Federal income tax return for the calendar year 1971 was prepared on a cash basis and filed with the Internal Revenue Service Center, Austin, Tex.

Petitioner reported the amounts of $61,158 and $31,930 as his distributive share of losses from the partnerships, West Scenic Apartment, Ltd. (hereinafter referred to as West Scenic), and Oak Wood Manor, Ltd. (hereinafter referred to as Oak Wood), respectively.

West Scenic and Oak Wood maintained their books and filed their Federal income tax returns on a calendar year basis using the accrual method of accounting.

West Scenic is a limited partnership formed under the laws of the State of Arkansas. Its articles of limited partnership were adopted May 29, 1970, and filed with the county and probate clerk for Pulaski County, Ark., on June 12, 1970. Its original general partner was Harold Bell and the original limited partners were Reed S. McConnell, Joe T. Smith, John A. Kincannon, and Harold Bell.

In an amendment to the articles dated March 25, 1971, and duly filed on March 31, 1971, petitioner was substituted as a limited partner of West Scenic for Harold Bell. During the period in issue petitioner owned a 25-percent interest in the profits, losses, and distributions of West Scenic.

West Scenic was formed to acquire, construct, and operate a 150-unit apartment complex, known as West Scenic Apartments, under a federally assisted program implemented by section 236 of title II of the National Housing Act, as amended.

Oak Wood is a limited partnership formed under the laws of the State of Arkansas. Its articles of limited partnership were adopted January 25, 1971, and filed with the county and probate clerk for Pulaski County, Ark., on January 28, 1971. The original

general partner was Reed McConnell Builders, Inc. (hereinafter referred to as Builders), and the original limited partners were Harold Bell, Joe T. Smith, John A. Kincannon, and Builders.

In an amendment to its articles dated March 25, 1971, and filed on March 28, 1971, petitioner was substituted as a limited partner in Oak Wood for Harold Bell. Petitioner owned a 25-percent interest in the profits, losses, and distributions of Oak Wood.

After the admission of petitioner to Oak Wood, additional limited partners were admitted whose interests in Oak Wood were acquired pursuant to a limited circulation memorandum. The admission of these additional limited partners was formalized in an additional amendment to the articles.

Oak Wood was formed to acquire, construct, and operate a 200-unit apartment complex, known as Oak Wood Manor, under a federally assisted program implemented by section 236 of title II of the National Housing Act, as amended.

A "Section 236 Program" refers to a low and middle income housing project which is eligible for a permanent Federal Housing Administration (hereinafter referred to as FHA) insured mortgage under section 236 of the National Housing Act.[2] A "Section 236 Program" also provides for monthly payments from the Government directly to the mortgage lender on behalf of the project owner. The owner is required to pass benefits of this subsidy along to eligible residents in the form of lower rent. The program is designed to enable the sponsor of the project, in this case the sponsors of West Scenic and Oak Wood, to reduce rentals of eligible tenants to those levels below market rates which can be afforded by low and middle income families under standards established by the Federal Government.

In 1968 petitioner organized L. E. Lay & Co., Inc. (hereinafter referred to as the Company), an Arkansas corporation engaged in the mortgage banking business. He served as the chairman of its board of directors and chief executive officer until December 1974.

During the period in which petitioner was employed by the

---

[2]Tax incentives and financial arrangements for sec. 236 housing projects are explained in Panel Discussions Before the Committee on Ways and Means, 93d Cong., 1st Sess. 553 (1973). The resulting benefits include not only valuable tax shelter provisions, but also extend to nontax incentives such as financial support from FHA mortgage guarantees, nonrecourse loans, and up to 70-percent guaranteed secondary financing from FNMA and GNMA at favorable rates.

Company, the Company provided or arranged for short-term and long-term mortgage loans for approximately 20 to 25 multifamily housing projects. The mortgages were insured against loss by the FHA.

The services of the Company, in providing or arranging financing for these multifamily housing projects, were performed personally by petitioner or by Company employees under his direct supervision.

Two of these 20 to 25 multifamily housing projects for which Company provided or arranged financing were West Scenic and Oak Wood.

On January 8, 1970, Company requested the Federal National Mortgage Association (FNMA) for a preliminary commitment to purchase a mortgage related to the West Scenic projects in the amount of $2,207,400 bearing interest at the rate of 8.5 percent per annum. On January 20, 1970, FNMA issued the preliminary commitment.

On May 6, 1970, pursuant to an FHA application, FHA executed a "Commitment For Insurance of Advances" for the West Scenic project. Under this commitment the FHA agreed to insure under the provisions of section 236 of the National Housing Act, as amended, a mortgage note in the principal amount of $2,172,400.

On June 8, 1970, Company assigned to the Prudential Insurance Co. (hereinafter referred to as Prudential) all of its right, title, and interest in the commitment, which assignment was approved on the same date by the FHA.

On June 10, 1970, Prudential agreed to loan West Scenic the principal amount of $2,172,400 for 500 months with interest at the rate of 8.5 percent per annum with monthly installments of $15,925.74 interest and principal payable beginning the 1st day of the 21st month following the month the mortgage given to secure the loan was dated. Only interest was payable on the loan for the first 20 months.

Under the terms of Prudential's commitment to make the loan for the West Scenic project, West Scenic agreed to pay to Prudential "discount" or "points" equal to 2½ percent of the principal amount of the loan in the amount of $54,310. This fee was to be paid for the use of borrowed money. This fee was in addition to the annual interest charged on the mortgage loan referred to above.

On June 16, 1970, there was executed by West Scenic and Prudential a "Building Loan Agreement" for the West Scenic project. The terms of this agreement called for Prudential to make a building loan in the principal amount of $2,172,400, the proceeds of which were to be disbursed in monthly advances in amounts approved for insurance by the FHA pursuant to monthly application by West Scenic.

On June 16, 1970, West Scenic executed a deed of trust note in favor of Prudential in the principal amount of $2,172,400. Under the terms of this note, principal bore interest at the rate of 8.5 percent per annum on the unpaid balance. Interest was payable on June 1, 1970, and each month thereafter, up to and including March 1, 1972, and monthly principal and interest payments of $15,925.74 were payable on the first of every month thereafter until fully paid. Any balance remaining on March 1, 2012, was due and payable in full. West Scenic executed a deed of trust in favor of Prudential on June 16, 1970, to secure the deed of trust note.

Also on June 16, 1970, West Scenic contracted with Builders on a "cost plus" basis to construct the West Scenic project. Pursuant to the contract terms, construction was to begin within a period of 10 days and was to be completed by November 26, 1971.

On the same date a mortgagor's certificate, a mortgagee's certificate, and an agreement and certification were executed in connection with the West Scenic project. West Scenic also issued on that day a request for payment to Prudential in the amount of $201,773 covering the first advance of mortgage proceeds.

On June 16, 1970, an application was also submitted by Prudential to the FHA requesting insurance of the advance of the mortgage proceeds representing the first draw in the sum of $201,773 relative to the West Scenic project. On the same date the FHA issued its certificate of mortgage insurance covering the first draw. The FHA issued its insurance of the mortgage loan for the West Scenic project with a preliminary endorsement of the deed of trust note.

A closing statement dated June 17, 1970, prepared with regard to the West Scenic project, indicates the application of the proceeds to $201,773 of the initial advance from Prudential to West Scenic. From these proceeds there were paid the following items:

Portion initial service charge
(L. E. Lay Co.) ............................................. $21,724
Preliminary FMNA commitment fees ..................... 5,431
FHA examination fee ....................................... 6,518

The portion initial service charge in the amount of $21,724 listed above was paid to the Company out of the proceeds of the first advance to West Scenic.

In addition to the receipt of this $21,724, Reed S. McConnell and Harold Bell agreed to pay to Company an additional 1 percent or $21,724. In connection with this agreement, West Scenic executed a residual receipt note on June 16, 1970, in the amount of $21,724.

The $6,518 FHA examination fee included in the above table is equal to 0.3 percent of $2,172,400 and was paid in connection with obtaining the conditional and firm commitments from the FHA to insure the mortgage loan in the amount of $2,172,400.

The $5,431 preliminary FMNA commitment included in the above table is equal to 0.25 percent of $2,172,400 and was paid by West Scenic in connection with securing from FNMA a preliminary commitment to purchase a mortgage loan in the principal amount of $2,172,400.

Construction on the West Scenic project commenced in June 1970 and was completed around November 1971. During the construction period Prudential disbursed the mortgage proceeds on a monthly basis to West Scenic. During that time Prudential collected, and withheld on a pro rata basis out of the proceeds of said draws, 2½-percent discount or points equal to $54,310 which amount was paid for the use of borrowed money. This fee is in addition to the annual interest charged on the loan between Prudential and West Scenic for $2,172,400.

At the end of the advances of the mortgage proceeds by Prudential and upon completion of construction of the West Scenic project, the FHA made a final endorsement of the deed of trust note indicating the total of all advances ($2,172,400) which it had approved. This final endorsement was made on November 12, 1971.

Of the 2½-percent discount or points collected by Prudential, 1½ percent, or $32,586, represented the amount which Prudential would have been obligated to pay FNMA had Prudential decided to sell the West Scenic project loan to FNMA pursuant to a permanent commitment by FNMA to purchase said loan.

Prudential did not take the permanent commitment from FNMA. The preliminary commitment had been allowed to expire before June 1970.

For the taxable year 1971, West Scenic filed a partnership return with the Director of the Internal Revenue Service Center, Southwest Region, Austin, Tex., and reported an ordinary loss of $244,630.31.

On this partnership return the following items were claimed as deductions under the category "interest":

| | |
|---|---:|
| Construction loan commitment fee | $21,724.00 |
| Permanent loan brokerage | 21,724.00 |
| Permanent loan commitment fees | 47,535.20 |
| | 90,983.20 |

The amount of $21,724 designated above as construction loan commitment fee is 1 percent of $2,172,400 and included in the 2½-percent amount referred to above during the construction period when Prudential collected $54,310 from the West Scenic proceeds.

The amount of $21,724 designated above as permanent loan brokerage is the amount of $21,724 referred to in the residual receipts note executed on June 16, 1970.

The item on the 1971 partnership return of West Scenic labeled "permanent loan commitment fees" consists of the following:

| | |
|---|---:|
| 1½ percent FNMA permanent commitment fee paid to Prudential | $32,586.00 |
| 0.3 percent FHA examination fee | 6,518.00 |
| 0.25 percent FNMA preliminary commitment fee | 5,431.00 |
| Accounting error | 3,000.20 |
| | 47,535.20 |

In September 1970, Company made application to the FHA for a firm commitment to insure a mortgage loan in the principal amount of $3,005,400 relative to the Oak Wood project. The Company executed a "Preliminary Commitment of Funds Contract (Multifamily)" on October 22, 1970, for the Oak Wood project. FNMA accepted it on October 27, 1970.

On February 9, 1971, the FHA executed a commitment for insurance of advances for the Oak Wood project similar to the commitment for insurance of advances executed for the West Scenic project.

On May 5, 1971, Oak Wood and Company executed a building

loan agreement for the Oak Wood project. Under the terms of this agreement, Company agreed to make a building loan in the principal amount of $2,990,000, the proceeds of which were to be disbursed in monthly advances in amounts approved for insurance by the FHA pursuant to monthly application.

At the same time Oak Wood executed a deed of trust note in favor of Company in the principal amount of $2,990,000. Under the terms of this note, principal bore interest at the rate of 8.5 percent per annum on the unpaid balance. Interest alone was payable from June 1, 1971, through April 1, 1973, and monthly principal and interest payments of $21,919.52 were payable on the first of each month thereafter until fully paid. Any balance remaining was due and payable on April 1, 2013.

On May 5, 1971, Oak Wood also executed a deed of trust in favor of Company to secure the deed of trust note. On the same date Oak Wood contracted with Builders to construct the Oak Wood project. The work was to be performed on a "cost plus" basis. Construction was to commence within a period of 10 days and was to be completed by November 6, 1972. In connection with the Oak Wood project there was also executed on May 5, 1971, a mortgagor's certificate, a mortgagee's certificate, and an agreement and certification. Oak Wood issued a request for payment to company in the amount of $334,180 covering the first draw.

Also on May 5, 1971, an application was submitted by Company to the FHA requesting FHA to insure the advance of mortgage proceeds representing the first draw in the sum of $334,180 relative to the Oak Wood project. On the same date, the FHA issued its certificate of mortgage insurance covering the first draw and the FHA insured the mortgage loan for the Oak Wood project with a preliminary endorsement of the deed of trust note.

From the proceeds of the first advance of $334,180 for the Oak Wood project, the following items were paid:

| | |
|---|---|
| Financing fee | $59,800.00 |
| FNMA fee (portion) | 48,568.25 |
| Examination fee | 8,970.00 |
| Refund of portion of FNMA fee paid in advance | 3,756.75 |

With regard to the Oak Wood project, Company did not earmark or actually loan any of its moneys for the $2,990,000

loan. Instead, on May 6, 1971, Company transferred to Simmons First National Bank (hereinafter referred to as Simmons), the $2,990,000 mortgage loan. In connection with this transfer, Company also assigned to Simmons the deed of trust given by Oak Wood to secure the Oak Wood project loan. The examination fee of $8,970 is equal to 0.3 percent of $2,990,000 and was paid in connection with the obtaining of the firm commitment from the FHA to insure the mortgage loan in the principal amount of $2,990,000.

The application of $3,756.75 of the mortgage proceeds received from the initial advance for the "refund of portion of FNMA fee paid in advance" was a reimbursement of the fee paid in connection with the preliminary commitment of funds contract accepted by the FNMA on October 27, 1970.

Out of the proceeds of the initial draw, there was paid to Simmons the balance of the FNMA fee of $48,568.25. This fee is in consideration for the purchase by Simmons of the Oak Wood project loan at a 1.625-percent "discount." This fee was paid for the use of borrowed money.

Construction on the Oak Wood project commenced in May 1971 and was completed in September 1972. The Oak Wood project loan was disbursed in monthly advances by Simmons. At the end of the advances of these proceeds and upon completion of the construction of the Oak Wood project, the FHA made a final endorsement on the deed of trust note indicating the total of all advances ($2,990,000) which it had approved. The final endorsement was made on September 22, 1972, by way of an allonge to deed of trust note dated May 5, 1971, which was executed on September 22, 1972. The terms were changed to require the beginning of monthly payments of principal and interest on November 1, 1972, until October 1, 2012, at which time the unpaid balance would be due and payable.

For the taxable year 1971, Oak Wood filed a partnership return with the Director of the Internal Revenue Service Center, Southwest Region, Austin, Tex., and reported an ordinary loss of $127,719.31. On this partnership return there was deducted as "interest" the following:

| Description | Amount |
|---|---|
| Interim construction financing | $47,482.75 |
| FNMA fee 8/18 prorated to 1971 | 23,255.32 |
| Brokerage fee 8/18 prorated to 1971 | 26,577.51 |

The Interim Construction Financing item represents the interest accrued on the loan of $2,990,000 from May 6, 1971, to December 31, 1971, at the rate of 8.5 percent per annum.

The FNMA fee of $23,255.32 represents the proration by Oak Wood of the amount of $52,325 (1¾ percent of $2,990,000) over the period of construction of the Oak Wood project based upon an 18-month construction period with 8 of those months occurring in 1971.

The brokerage fee of $26,577.51 represents the proration by Oak Wood of the amount of $59,800 (2 percent of $2,990,000) paid to Company in 1971. The amount deducted was computed on the basis of a construction period of 18 months with 8 of those months occurring during 1971.

On the 1971 partnership return filed by Oak Wood, the sum of $3,986.63, labeled as "FHA exempt fee 8/18 prorated to loan," was deducted. The item represents the proration by Oak Wood of the $8,970 (0.3 percent of $2,990,000) FHA examination fee. The deduction was based upon an 18-month construction period with 8 of those months occurring during 1971.

On February 28, 1976, respondent sent his statutory notice of deficiency to the petitioners determining the deficiency herein which arises solely from adjustments made by respondent to the two partnership returns.

OPINION

We must decide whether two accrual basis partnerships, in which the petitioner Lyndell E. Lay was a limited partner, are entitled to deductions in the taxable year 1971 for certain fees paid in connection with the financing of two low and middle-income multifamily housing projects. Both partnerships, West Scenic Apartments and Oak Wood Manor, were constructed and are being operated as section 236 housing projects under the National Housing Act.

Because of concessions by the petitioners, three issues remain for disposition:

(1) Whether financing fees in the nature of interest should be

deducted as claimed on the two partnership returns or amortized over their respective loan periods;

(2) Whether a percentage fee paid to a mortgage banking company was in the nature of interest or was incurred for services rendered; and

(3) Whether a 1½-percent FNMA fee characterized as interest, which was paid to reimburse two partners of one project, is properly deductible on the partnership return.

*Issue 1. Interest Withheld by Lenders from Loan Proceeds*

On June 16, 1970, West Scenic executed a note in favor of Prudential Insurance Co. in the principal amount of $2,172,400, a deed of trust, and a deed of trust note to secure that loan. The advances of the mortgage proceeds of the loan were made by Prudential during the approximately 17-month period for construction of the West Scenic project. Prudential received 2½ points, or $54,310, which was paid on a pro rata basis out of the loan proceeds that Prudential disbursed to West Scenic during the construction phase.

The Oak Wood project's financing was slightly different. On May 5, 1971, Oak Wood executed a note in favor of the Company in the principal amount of $2,990,000 and secured it with a deed of trust note and deed of trust. The next day the Company transferred the note and deed of trust to Simmons National Bank. The proceeds of the loan evidenced by this note were disbursed in monthly advances during Oak Wood's 17-month construction period. Simmons withheld from the proceeds of the first advance an amount equal to 1.625 percent or $48,568.25.

The parties have stipulated that these fees represent interest, but they disagree as to their deductibility. As a result of these expenditures, respondent's position is that each partnership obtained the use of money over a definite and fixed period of time extending beyond the year in which the fees were paid. Specifically, respondent maintains (1) that the expenditures generated benefits extending throughout the life of each loan, and, therefore, should be amortized over the period benefited, and not deducted as claimed on the partnership returns; (2) that the period benefited is the length of each loan, the terms of which are set forth in the respective deed of trust notes, which are evidences of underlying indebtedness (both notes extend for approximately 40 years; 501 months for West Scenic and 497

months for Oak Wood); and (3) that each amount relates to each loan as a whole and is attributable to future years, so that interest accrues ratably over the entire period of each loan.

To the contrary, petitioner asserts that these fees were properly deducted because they became accrued liabilities of each project in the taxable year 1971, irrespective of the year of payment. Alternatively, petitioner argues that in substance both projects have two separate and distinguishable loans, an interim construction loan and a permanent loan, or, if they constitute one loan, then two separate and distinguishable periods nevertheless exist, a construction period and a permanent operational base. In either case petitioner contends that the fees should be allocated between the two phases and amortized over the life of the respective periods to which they relate.

Since it is stipulated that the fees withheld by the final lending institutions constitute interest, this issue is narrowed to the timing of the deduction of such amounts. Section 163(a) provides that "there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." Both partnerships in this case utilize the accrual method of accounting. West Scenic deducted in 1971 the entire 2½ percent, or $54,310, received by Prudential, even though this sum was withheld ratably from loan proceeds periodically throughout the construction phase from June 1970 to November 1971. Oak Wood deducted in 1971 an allocated portion of the 1.625 percent received by Simmons by prorating the 18-month construction period to the 8-month construction period occurring in 1971.

With respect to accrual method taxpayers, interest is deducted as it accrues, which is ratably over the period of the loan; *Higginbotham-Bailey-Logan Co. v. Commissioner*, 8 B.T.A. 566 (1927); *Court Holding Co. v. Commissioner*, 2 T.C. 531 (1943), approved and affd. in 324 U.S. 331 (1945); *James Brothers Coal Co. v. Commissioner*, 41 T.C. 917 (1964). The interest deduction cannot be accelerated by payment in advance. *B. F. Goodrich Co. v. Commissioner*, 1 T.C. 1098 (1943). Sums constituting a bonus charged for making the loan must be amortized over the life of the loan, and are not deductible in full if the notes do not mature until after the close of the year. *Court Holding Co. v. Commissioner*, 2 T.C. at 536.

Consequently, petitioner's stance with regard to current deductibility of all the interest as a result of accrual accounting

is erroneous. Amortization is required and the duration of each loan becomes a significant factor in determining the length of time over which interest must be amortized. After considering all the facts, we conclude that each partnership had one loan of an approximate duration of 40 years.

First, the provision contained within the instrument executed between a mortgagor and a lender controls the rate for any prepaid interest commitment fee deductions. There is nothing in the instruments in this case that indicates an agreement to any specific allocation for the construction period. Interest is considered to accrue ratably over the life of the loan in the absence of an agreement as to the amount of discount allocated to each monthly payment. *James Brothers Coal Co. v. Commissioner, supra* at 922.

Petitioner argues that respondent erroneously treats an accrual method taxpayer in the same manner as a cash method taxpayer by forcing both to deduct interest in the form of points on a loan discount as both pay the interest. He asserts this is contrary to *James Brothers Coal Co. v. Commissioner, supra,* and contrary to sections 461 and 446.

We disagree. Petitioner misinterprets the accrual accounting method. He confuses the concept of discount advanced from the loan proceeds during the construction phase as dispositive of accrual tax accounting. Interest is the compensation for the use or forebearance of money regardless of the form. *Old Colony Railroad Co. v. Commissioner,* 284 U.S. 552 (1932); *Deputy v. duPont,* 308 U.S. 488 (1940). In the usual loan discount situation a borrower receives from a lender a lesser sum than that stated on the face of the loan. The difference reflects the agreed charge for borrowed money. As stated in *Rubnitz v. Commissioner,* 67 T.C. 621, 628 (1977):

a cash basis borrower has not paid interest when the loan transaction is structured so that a loan fee is "withheld" by the lender from what is called the principal amount of the loan and only the supposed principal amount minus the loan fee is actually made available for the borrowing taxpayer's use. *J. W. Solof,* 1 B.T.A. 776, 783; *A. O'Day,* 20 B.T.A. 455, 458; *John C. Cleaver,* 6 T.C. 452, affirmed 158 F.2d 342 (7th Cir.), certiorari denied 330 U.S. 849; *John Randolph Hopkins,* 15 T.C. 160, 180–181; *Sanford Campbell,* T.C. Memo. 1970–126, 29 T.C.M. 539, 1970 P-H Memo. T.C. par. 70,126; Rev. Rul. 75–12, 1975–1 C.B. 62; Rev. Rul. 59–260, 1959–2 C.B. 137.

As the *Rubnitz* case makes clear, a taxpayer deducts a ratable portion of each payment for interest when there is no agreement

to the contrary. Interest in the nature of a loan discount must be prorated over the entire life of each loan regardless of when it is actually paid.[3] Deductibility of the interest will turn upon when an accrual method taxpayer accrues and when a cash method taxpayer actually pays the interest.

We view the interest as relating to the entire loan from Prudential to West Scenic, because the interest included in the "principal" amount of the West Scenic loan was allocable only in monthly installments over the life of the loans. There is no agreement to the contrary in this case. The similar characteristics of the loan in Oak Wood result in the same allocation. Thus, the 2½-percent fee received by Prudential and the 1.625-percent fee received by Simmons were actually withheld from the disbursement of the loan proceeds and were payable in monthly installments over the respective loan periods of the two projects. Therefore, the deductibility of interest must be prorated over the life of each loan.

We also find unpersuasive the petitioner's arguments concerning section 446, which permits the accrual method of accounting, and section 461, which sets forth the proper taxable year in which to take a deduction under the method of accounting utilized. Accrual accounting permits a taxpayer to deduct expenses for the taxable year in which all events have occurred to determine liability with reasonable accuracy. See secs. 1.446–1(c)(1)(ii) and 1.461–1(a)(2), Income Tax Regs. As a result, an accrual method taxpayer can deduct interest only in the period in which the use of money occurs and only to the extent of the interest cost of using the borrowed funds during that period. *Miller & Vidor Lumber Co. v. Commissioner*, 39 F.2d 890, 892 (5th Cir. 1930), cert. denied 282 U.S. 864 (1930). We have already held that the 2½ points by Prudential and 1.625 percent by Simmons were interest for the use of the principal sum over the

---

[3]The concept is explained in *Cole v. Commissioner*, 64 T.C. 1091, 1103 and n. 4 (1975):

"The requirement that the taxpayer claim his deduction in a manner which will clearly reflect income is a long-established statutory rule. Sec. 200(d) of the Revenue Act of 1924 provided:

'The deductions and credits provided for in this title shall be taken for the taxable year in which "paid or accrued" or "paid or incurred," dependent upon the method of accounting upon the basis of which the net income is computed under section 212 or 232, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period.'

Sec. 200(d) became sec. 43 of the 1939 Code, which in turn was the predecessor of sec. 461 of the 1954 Code. For a more extensive discussion of this development see *Andrew A. Sandor, supra*. See also Asimow, "Principle and Prepaid Interest," 16 U.C.L.A. L. Rev. 36 (1968-69)."

duration of the respective loan periods. This view is supported by our *Rubnitz* opinion whereby the points withheld by the lender from the loan proceeds would not have been considered accrued during the year in which the points were withheld, regardless of whether the taxpayer is on an accrual or cash method. *Rubnitz v. Commissioner, supra* at 628 n. 8 (1977); see also (*Lovejoy v. Commissioner,* 18 B.T.A. 1179 (1930); *Anover Realty Corp. v. Commissioner,* 33 T.C. 671 (1960). Hence these "points" must be attributed to their respective loans and amortized over the duration of each loan.

At this juncture, discussion as to the number of loans is necessary. Petitioner contends that in substance two independent loans, or at least two distinct periods, exist for each project with separate phases for construction and permanent financing. He asserts that the interest and expenses attributable to the construction phase in each project should be deducted ratably only over its respective construction period.

To bolster this contention petitioner testified and introduced material on brief relating to section 236 housing projects. Basically 90-percent nonrecourse loans insured by the FHA are obtained from a lending bank which charges a fee to compensate the Department of Housing and Urban Development (HUD) and FHA for process, inspection, and periodic examination charges. The fee also covers FNMA and Government National Mortgage Association (GNMA) commitment and marketing fees to ensure their services as secondary mortgagees after construction. FNMA or GNMA, in turn, use their fees to finance the marketing of bonds on the commercial money market. Neither agency will buy notes from lenders without receiving these fees. This purchase will occur, if at all, after completion of construction.

Here each partnership negotiated a single loan secured by a 40-year mortgage. The fact that the mortgage note could later be sold by the holder on the secondary mortgage market has no bearing on the disposition of the first transaction except as to who is the ultimate receiver of payments owed. Notwithstanding the transfer of the note here, the original loan terms remain unchanged. Petitioner is bound by the provisions of each original loan document terms extending the time period for repayment of each mortgage, here 40 years; terms governing the rate of interest, here 8½ percent on the unpaid balance; and terms

securing the property to be used as collateral, here the deed of trusts and the deed of trust notes for each project. Because the mortgage was not altered and because no other mortgage was directly executed between the partnerships (here, the original mortgagors) and any secondary mortgagees, the 40-year duration of each loan is subject to the amortization period.[4]

At trial, petitioner premised his two loan—two phase contention by emphasizing the higher risk involved during construction, the resulting higher yield required, and the active monitoring usually pursued by lenders as a consequence; factors which he maintains are absent in permanent mortgage loans. We note, however, that documents of permanent lenders were initially employed. Moreover, despite assertions that there were two closings separating interim from permanent financing, the first closing settled all significant transactions and secured all the necessary legal documents. What petitioner refers to as a second closing, which lacks a new mortgage note and a new deed, was in actuality an assignment of legal interests in the payment of money.

Although the number of loans in existence is a necessary factor in the computation of the allocation, this involves only the practical application of the underlying issue, which is the determination of the overall period benefited for purposes of amortization.

Petitioner contends that interest paid during any year of a loan theoretically may benefit any other year as well, so that an accrual method taxpayer's payment of "points" or loan "discount" is not the prepayment of interest that rightfully accrues in a subsequent year. This reasoning begs the question. Regardless of the number of loans, the payments were essential to secure the financing needed for each project. It is a logical extension of this premise that the period benefited as a result of these fees is not confined to the year of payment. This is because the fees were for the purpose of obtaining long-term financing for each project; therefore, the entire financing period has profited.

Respondent analogizes these fees to bond discounts and cities *United States Playing Card Co. v. Commissioner*, 15 B.T.A. 975

---

[4]The Sept. 22, 1972, allonge to the deed of trust note for the Oak Wood project only changed the maturity date as a result of a change in the date of commencement of amortization of the loan. This can hardly be viewed as a negotiation of a new loan.

(1929), wherein the Court disallowed a deduction for commission and selling expenses of three issues of gold notes. The analogy is apt. There the Court concluded that the discount was in the nature of deferred interest and, therefore, amortizable over the bonds' lives. We similarly find the characterization of fees in this case as deferred interest because the fees were included in the principal amount of each loan, payable in monthly installments over the life of each loan. When the fees are so characterized, it is immaterial whether a bank later assigns the notes. *United States Playing Card Co. v. Commissioner, supra.* To hold otherwise in the case of accrual taxpayers would result in the nonmaturing of interest expense and the income derived from that expense during the period of use of borrowed funds. Thus, the amortization of the amounts withheld by Prudential and Simmons over the entire 40-year period to which they relate results in accurate matching of income and expense items and a true reflection of income in any given accounting period.[5]

### Issue 2. Mortgage Banker's Fees

A 2-percent financing fee was paid by both partnerships to L. E. Lay & Co., Inc., a mortgage banking firm. West Scenic paid 1 percent in cash during 1970 from the proceeds of the first advance from Prudential and this amount was deducted on the 1970 partnership return. The remaining 1 percent, or $21,724, was financed by a note executed by West Scenic on June 16, 1970, to two of the partners in West Scenic. Oak Wood project's financing was only slightly different. On May 5, 1971, Oak Wood executed a note in favor of the Company in the principal amount of $2,990,000 secured with a deed of trust note and deed of trust.

---

[5]Sec. 208(a) of the Tax Reform Act of 1976 enacted a new sec. 461(g) of the Code providing proper deductibility, via allocation, of prepaid interest by cash method taxpayers. With regard to accrual method taxpayers, the House Ways and Means Committee report accompanying this section stated by way of instruction:

"The new statutory rule relates to interest prepayments by a cash method taxpayer. It is intended to conform the tax deductibility of prepaid interest by cash method taxpayers to the rule which your Committee understands to be proper under present law for interest prepayments by an accrual method taxpayer.[6]

\* \* \* \* \* \* \*

"[6]An accrual method taxpayer can deduct prepaid interest only in the period in which the use of money occurs and only to the extent of the interest cost of using the borrowed funds during that period. It is not material when actual payment occurs, nor is the existence of a fixed liability to make a prepayment of interest sufficient to justify a deduction. Rev. Rul. 68–643, 1968–2 C.B. 76. [H. Rept. 94–658, 94th Cong., 1st Sess. 100 (1975)]."

The *next day* the Company transferred the note and deed of trust to Simmons. The proceeds of the loan evidenced by this note were disbursed in monthly advances during Oak Wood's 17-month construction period. Oak Wood paid the Company their 2-percent fee, or $334,180, from the proceeds of that first advance.

Respondent maintains that these fees are not interest, as petitioner contends, but were for services rendered by the Company in securing FHA mortgage insurance and for arranging permanent financing.

On balance we conclude that the fees were for specific services rendered in connection with each project's account and, therefore, are not deductible as interest. The 2-percent fixed charge in this case has no relationship to the amount borrowed or to the specific time period for which payment is designated.

We find the requisites for classification as interest lacking here. "Points" usually refer to a cash payment of a sum upon the closing and before the mortgage period begins. It is additional interest which the bank requires to be paid upon the assumption of a mortgage to effectively increase the stated rate per year. At no time did Company provide actual financing of any project. The fact that Company might have had a ready line of credit generally available to borrowers falls short of the significant risk taken by lenders who earmark and actually pay funds. At no time did Company loan any of its funds for either project. At no time did West Scenic or Oak Wood ever borrow any funds from Company for the construction of their housing projects. In short, there exists no indebtedness to permit a deduction.

The 2-percent fee to Company in this case was a separately stated charge for specific services rendered to the buyer in originating a favorable loan package, rather than assumed in the stance of a preliminary lender. These services included securing FHA mortgage insurance for the loan and for arranging permanent financing by investigating the various lenders in an attempt to secure the most desirable terms for his "clients," a term even petitioner acknowledges rather than using "borrowers."

Petitioner distinguishes Oak Wood from West Scenic in that in the former project Company signed the note as lender. We find that distinction inconsequential because the next day Company transferred the note to Simmons and, in substance, Company was merely a conduit to locate the most favorable

financing. This conclusion is supported by the fact that the parties stipulated that Simmons advanced the loan proceeds for Oak Wood. It is clear that in negotiating not only the $2,990,000 FHA insured mortgage loan, but also in arranging the financing with Simmons, Company provided valuable services. The fact that Simmons might or might not have had the intention of transferring the note after construction is immaterial to the characterization of these fees in the first instance. As a result, these services are properly characterized as brokerage and commission fees amortizable over the life of each loan on the respective projects. *Longview Hilton Hotel Co. v. Commissioner*, 9 T.C. 180 (1947).

### *Issue 3. Preliminary Commitment Fee to FNMA*

An amount of $3,756.75, or 0.125 percent, was paid out of the initial advance proceeds in the Oak Wood project to Reed S. McConnell, Inc., to reimburse it for the same amount it had expended to secure a preliminary commitment from FNMA to purchase a mortgage loan for the Oak Wood project. Notwithstanding the issuance of a preliminary commitment to purchase the loan, FNMA did not purchase the loan made by Simmons.

Petitioners maintain that Oak Wood is entitled to deduct this preliminary commitment fee for 1971 when the commitment expired. We agree with respondent that this contention is without merit. This FNMA commitment fee represents the cost incurred in securing the loan, a simple reimbursement of the funds paid by McConnell, and in no way can be characterized as compensation for the use or forbearance of money.

Petitioner cites *Longview Hilton Hotel Co. v. Commissioner*, *supra*, as support for his position, but in that case the accrual method taxpayer was permitted a deduction for unamortized expenses in the year of dissolution because at dissolution a third party had assumed the debt, placing the taxpayer in the same position as if the mortgage debt had been satisfied.

The facts in the instant case are easily distinguishable. No third party assumed the debt burden, no debt was discharged, and no dissolution to place a finite end to the loan occurred. Rather, the $3,756.75 was paid to achieve benefits which extend to the life of the Oak Wood loan. Thus, the sum should be prorated over the life of the loan.

After careful consideration, we conclude that the fees in issue

are properly deducted ratably over the period of each loan of approximately 40 years with respect to each project.

*Decision will be entered under Rule 155.*