Alex A. ABOUSSIE and Alice
Aboussie, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Robert G. ABOUSSIE and Linda M.
Aboussie, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Nos. 83–1710C(C), 83–1711C(C).

United States District Court,
E.D. Missouri.

Sept. 14, 1984.

On Motion to Alter or Amend Judgment
Oct. 19, 1984.

Gerald Zafft, St. Louis, Mo., for plaintiffs.

Ludwig Adams, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MEREDITH, District Judge.

This case is before the court upon a filing of a claim for refund and the denial thereof.

After consideration of the pleadings, the testimony and exhibits introduced at trial, the credibility of the witnesses, the parties' supplemental briefs and the applicable law, the Court makes the following additional and further findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is adopted as such, and conversely, any conclusion of law equally applicable as a finding of fact is so adopted.

### Findings of Fact

1. This is an action for the refund of federal individual income taxes.

2. Plaintiffs Alex A. Aboussie and Alice Aboussie, husband and wife, reside at 6736 Eichelberger Avenue, St. Louis, Missouri 63109.

3. Plaintiffs Robert G. Aboussie and Linda Aboussie, husband and wife, reside at 9849 Sunset Greens Drive, St. Louis, Missouri 63127.

4. On their timely-filed Form 1040 return for 1978, Alex A. and Alice Aboussie reported a tax liability of $63,802.00. The tax was paid in full as of April 15, 1979 and the tax was assessed on August 6, 1979.

5. On their timely-filed Form 1040 return for 1978, Robert G. and Linda Aboussie reported a tax liability of $9,447.00. The tax was paid in full as of April 15, 1979 and the tax was assessed on August 6, 1979.

6. On August 15, 1981, Alex A. and Alice Aboussie filed a Form 1040X amended return for 1978 seeking refund of $5,227.00 in tax based upon their distributive share of an alleged loss of the partnership Bevo Place Associates.

7. On August 15, 1981, Robert G. and Linda Aboussie filed a Form 1040X amended return for 1978 seeking refund of $3,742.00 in tax based upon their distributive share of an alleged loss of the partnership Bevo Place Associates.

8. By letters dated May 2, 1983, the claims for refund were disallowed by the Internal Revenue Service.

9. Bevo Place Associates is a Missouri limited partnership formed pursuant to an Agreement of Limited Partnership dated July 19, 1978 for the stated purposes, among others, of acquiring, owning, developing, improving, maintaining and operating an apartment complex in accordance with the provisions of Section 221(d)(4) of the National Housing Act (12 U.S.C. § 1701 *et seq.*) and Section 8 of the U.S. Housing Act of 1937 (42 U.S.C. § 1437f *et seq.*).

10. The partners of Bevo Place Associates and their respective partnership interests were:

| Name | Percentage |
|---|---|
| Bevo Place, Inc. (Gen. Partner) | 1.0% |
| Medigroup, Inc. (Ltd. Partner) | 49.5% |
| Alex A. Aboussie (Ltd. Partner) | 24.75% |
| Robert G. Aboussie (Ltd. Partner) | 24.75% |

11. In 1977, Gershman Investment Corp. applied to the Missouri Housing Development Commission (hereinafter referred to as "MHDC") for a loan of $4,950,-000.00 to finance low-income housing for

the elderly. On December 21, 1977, MHDC issued a Conditional Commitment to lend $4,764,800.00 for the project. On September 20, 1978, MHDC issued a Firm Commitment to lend $4,950,000.00. The Commitment provided that the interest rate on the construction loan was 6% per annum and the interest rate on the permanent loan was 7½% per annum. The Commitment further provided for the payment of a financing fee of 2% of the amount of the loan and a permanent loan fee of 1½% of the amount of the loan, and for the payment of 1% processing fee to Gershman Investment Corp. at initial endorsement, subject to the assignment of FHA's Firm Commitment by Gershman to MHDC.

12. On August 17, 1978, the U.S. Department of Housing and Urban Development, Federal Housing Administration ("FHA") issued its Commitment for Insurance of Advances to Gershman Investment Corp. On September 28, 1978, Gershman Investment Corp. assigned the Commitment to Bevo Place Associates.

13. Also on September 28, 1978, various other documents were executed, including a Building Loan Agreement between MHDC and Bevo Place Associates under the terms of which the following items, among others, were to be paid from the proceeds of the building loan.

| | |
|---|---|
| a. Interest during construction | $222,749.00 |
| b. Real estate taxes | 5,000.00 |
| c. FHA mortgage insurance premium | 49,500.00 |
| d. Initial service charge | 99,000.00 |
| e. MHDC fee | 74,250.00 |
| f. Legal, organization & cost certification | 32,500.00 |
| g. Supplementary management fund | 19,800.00 |

The term of the loan was from September 28, 1978, through August 1, 2020, bearing interest at 6% through Final Endorsement for the construction portion of the loan and 7½% thereafter for the permanent portion of the loan.

14. Subsequent to September 28, 1978, construction commenced and was substantially complete on June 11, 1980.

15. On or about July 14, 1981, a loan closing ("Final Endorsement") was held.

16. Pursuant to draw requests made by Bevo Place Associates, and approved and funded by MHDC, Missouri Title Company disbursed during 1978 the following amounts, among others:

| Description | Payee | Amount |
|---|---|---|
| a. Interest | MHDC | $ 7,468.00 |
| b. Taxes | St. Louis | 2,434.00 |
| c. Mortgage Insurance | FHA | 24,750.00 |
| d. Service Charge | MHDC | 99,000.00 |
| e. MHDC Fee | MHDC | 74,250.00 |
| f. Legal Fees | Medigroup, Inc. | 5,000.00 |
| g. Management Fee | Medigroup, Inc. | 4,950.00 |

Out of the initial service charge of $99,000.00 paid to MHDC, MHDC paid Gershman Investment Corp. a processing fee of $49,500.00.

17. Plaintiffs have conceded that no portion of the $74,250.00 paid to the MHDC is deductible in 1978 and this court so finds.

18. The suits for refund were filed on July 19, 1983. Plaintiffs claim deductibility in 1978 of items a, b, and g, and portions of items c, d, e, and f, set forth in paragraph sixteen above.

### Conclusions of Law

1. This court has jurisdiction over this action pursuant to 28 U.S.C. 1346(a)(1).

2. The expenses at issue in this case are expenses incurred in the construction and acquisition of a capital asset and, therefore, are not deductible in 1978, but must be capitalized and amortized over the life of the Bevo Place Apartments beginning in 1980 when the asset was placed in service. Under 26 U.S.C. 263(a)(1) no deduction is allowable for amounts paid out for new buildings or for improvements made to increase the value of any property. Legal, brokerage, accounting and similar costs incurred in the acquisition or disposition of capital assets are capital expenditures. *Woodward v. Commissioner*, 397 U.S. 572, 576, 90 S.Ct. 1302, 1305, 25 L.Ed.2d 577 (1970); *Blitzer v. United States*, 684 F.2d 874, 893, 231 Ct.Cl. 236 (Ct.Cl.1982). The capitalization rule set forth in Section 263(a) serves to prevent a taxpayer from utilizing currently a deduc-

tion properly attributable, through amortization, to later years when the capital asset becomes income producing. *Commissioner v. Idaho Power Company*, 418 U.S. 1, 16, 94 S.Ct. 2757, 2766, 41 L.Ed.2d 535 (1974). "Capital expenditures" include the cost of acquisition of buildings. The items for which plaintiff seeks a deduction were costs of acquisition and construction. Therefore, the expenses at issue must be amortized over the longer life of the capital facility constructed.

3. The Mortgage insurance premium ($24,750.00), the MHDC fee ($74,250.00) and the management fee ($4,950.00) are construction related expenses and as such must be capitalized under the rule of *Idaho Power, supra*. The term of amortization is the entire life of the Bevo Place Apartments.

4. The term of amortization of the construction loan financing fee ($99,000.00) is the entire forty-two year life of the permanent loan. The Court finds that the taxpayers negotiated for a single loan with a construction period (6% interest) and a permanent period (7½% interest) even though the loan shows separate interest rates for each period. In *Lay v. Commissioner*, 69 T.C. 421 (1977) and *Wilkerson v. Commissioner*, 70 T.C. 240 (1978), rev'd on other grounds, 655 F.2d 980 (9th Cir.1981), the court permitted amortization only over the entire term of the loan even though both cases involved separate construction and permanent periods of the loan, separate closings, and separate fees for the construction and permanent periods of the loan. *Noble v. Commissioner*, 79 T.C. 751 (1982) does not apply because it involved negotiations with two separate lenders, and two separate mortgages, while the case at bar involves only one lender, one mortgage, and one loan and note. It does not appear that the taxpayers have engaged in sufficiently separate and distinct negotiations for construction and permanent financing so as to have bargained for and obtained separate construction and permanent loans. The court in *Lay, supra* at p. 436, explains its decision by stating that

"regardless of the number of loans, the payments were essential to secure the financing needed for each project. It is a logical extension of this premise that the period benefited as a result of these fees is not confined to the year of payment. This is because the fees were for purpose of obtaining long-term financing for each project; therefore, the entire financing period has profited."

The case at bar presents such a situation and attendant benefit. Therefore, the taxpayer will not be allowed to amortize the fee allowable to the construction period over the shorter term. The term of amortization will be the entire forty-two year life of the permanent loan, the period which was benefited.

5. Under 26 U.S.C. § 162(a) a deduction is allowed to ordinary and necessary expenses incurred in carrying on any trade or business. The court finds that Bevo Place Associates' rental business had not started to function in 1978 and, therefore, the FHA mortgage insurance premium and the construction loan financing fee incurred by the taxpayers must be capitalized as "pre-opening expenses." *See Bennett Paper Corp. v. Commissioner*, 699 F.2d 450, 452–453 (8th Cir.1983); *Richmond Television Corp. v. United States*, 345 F.2d 901, 907 (4th Cir.1965), remanded on other issues, 382 U.S. 68, 86 S.Ct. 233, 15 L.Ed.2d 143 (1965); *Hoopengarner v. Commissioner*, 80 T.C. 538, 540 (1983). Even though a taxpayer has made a firm decision to enter into a business and over a considerable period of time spent money in preparation for entering that business, he still has not "engaged in carrying on any trade or business" within the intent of Section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized. *Richmond, supra* at 907. The U.S. Court of Appeals for the Federal Circuit in *El Paso Company v. United States*, 694 F.2d 703, 714 (1982) cited *Blitzer v. United States*, 684 F.2d 874, 880, 231 Ct.Cl. 236 (1982) where the Court of Claims decided that expenses incurred before the

start of revenue producing operations were deductible under § 162 if not "in the nature of start-up costs or intended to produce benefits extending beyond the year in question." Plaintiffs' expenses are not normal recurring expenses to maintain the apartments but were clearly expended to begin operation of the apartments. In the case at bar the expenses were intended to produce benefits extending beyond the year in question. Such benefits were the capital assets, the apartments themselves, and the continued rental income which they would produce. The Bevo Apartments were organized to provide income through tenant's rental payments. No such payments could accrue until renting began and the benefits will continue as long as the apartments are being rented: the life of the apartment building. Therefore, the expenses were in the nature of start-up cash and as such non-deductible in 1978. All expenses were for start-up costs and are applicable to the capitalization of assets from which the benefits would flow, starting beyond the year in question.

6. The expenses in question in the case at bar must be capitalized and amortized beginning in 1980 when the asset was placed in service. Section 1–167 of the Treasury Regulations on Income Tax (1954 Code).

### JUDGMENT

Findings of fact and conclusions of law dated this date are hereby incorporated in and made a part of this judgment.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiffs are entitled to no tax refunds for the calendar year 1978. Plaintiffs' complaints be and the same are hereby dismissed with prejudice.

### ON MOTION TO ALTER OR AMEND JUDGMENT

This matter is before the court upon plaintiffs' motion to alter or amend judgment or to award a new trial. For the reasons set forth below, this motion will be denied.

Plaintiffs brought this action against defendant United States for a refund of their federal income taxes. Plaintiffs alleged that the Commissioner of Internal Revenue erroneously denied certain deductions pertaining to the construction of low income housing by plaintiffs' limited partnership. By a judgment dated September 4, 1984, this Court determined that plaintiffs were not entitled to tax refunds for the year 1978 and dismissed plaintiffs' complaints with prejudice. Plaintiffs seek reconsideration of that judgment.

The court determined that the expenses in issue were properly characterized as expenses incurred in the construction or acquisition of a capital asset, the Bevo Place Apartments. Because of their capital nature, most of the expenses must be capitalized and amortized over the life of the asset, beginning in the year the asset was placed into service, 1980. These expenses are therefore not deductible in 1978. Plaintiffs assert that this determination is erroneous; they have not, however, made any novel arguments in support of their motion.

 Under § 263(a)(1) of the Internal Revenue Code, no deduction is allowed for costs incurred for the acquisition or construction of capital assets. These costs are regarded as capital expenditures and must be amortized over the life of the asset. *Commissioner v. Idaho Power Co.,* 418 U.S. 1, 12–13, 94 S.Ct. 2757, 2764–2765, 41 L.Ed.2d 535 (1974); *Woodward v. Commissioner,* 397 U.S. 572, 575, 90 S.Ct. 1302, 1304, 25 L.Ed.2d 577 (1970). This method assures a proper matching of revenue and expense over the periods benefitted by the asset. *See Idaho Power, supra,* 418 U.S. at 10–11, 94 S.Ct. at 2763–2764. Further, a capital expenditure cannot be deducted as "ordinary and necessary" business expense under § 162 of the Code or as an expense of "management, conservation, or maintenance" under § 212. *Woodward, supra,* 397 U.S. at 575, 90 S.Ct. at 1304.

 The court correctly determined that all of the expenses at issue were directly related to the construction or acquisition of

the Bevo Place Apartments and as such must be capitalized under the rule of *Idaho Power.* With the exception of the construction loan financing fee, these costs must be amortized over the life of the Bevo Place Apartments. The legal fees are capital expenditures and will be amortized over the same period as the other construction-related expenses. *See Blitzer v. United States,* 684 F.2d 874, 893–4, 231 Ct.Cl. 236 (1982); *Cagle v. Commissioner,* 539 F.2d 409, 415–6 (5th Cir.1976).

Plaintiffs claim that the interest and taxes incurred for the project should be deducted in the year of payment, rather than capitalized and amortized. This claim is without merit. They argue that section 189 of the Code preempts *Idaho Power* regarding such expenses accrued or paid to construct low-income housing, but produce no authority in support of this proposition. Moreover, this argument was considered by this court before and rejected.

▇ The court also determined that the construction loan financing fee must be amortized over the 42 year life of the permanent loan. Plaintiffs again argue for an amortization period based on the life of the construction loan. Relying on *Noble v. Commissioner,* 79 T.C. 751 (1982), they claim that separate construction and permanent loans exist. The court expressly found a single loan was entered into because the transaction involved only one lender, one mortgage, and one note. Plaintiffs did not engage in sufficiently separate and distinct execution and negotiation on the loan to warrant separate loan treatment. The fee was essential to obtaining long-term financing and the entire financing period has profited thereby. *Lay v. Commissioner,* 69 T.C. 421, 436 (1977). *See also, Wilkerson v. Commissioner,* 70 T.C. 240 (1978), *rev'd on other grounds* 655 F.2d 980 (9th Cir.1981). Therefore, the term of amortization must be the life of the permanent loan, the period which was benefitted.

There has been no error shown in the court's Findings of Fact or Conclusions of Law and the Judgment based thereon. All

of plaintiffs' arguments had been previously presented to this court. Accordingly, plaintiffs' motion to alter or amend judgment or to award a new trial will be denied.