ANTONIO F. AND CANDACE J. C. AGUIRRE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Aguirre v. Commissioner
Docket No. 757-82.
United States Tax Court
T.C. Memo 1984-66; 1984 Tax Ct. Memo LEXIS 599; 47 T.C.M. (CCH) 1066; T.C.M. (RIA) 84066; February 13, 1984. Antonio F. Aguirre, *600 pro se. Patrick C. McGovern, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $1,399 deficiency in petitioners' 1979 Federal income tax. After concessions, the issues for decision are: (1) Whether traveling expenses incurred by petitioner, Antonio F. Aguirre, with respect to his employment at the San Onofre Nuclear Generating Station [1] are deductible under section 162(a); [2] and (2) whether petitioners are entitled to deduct interest and legal expenses incurred with respect to petitioner's rental property in excess of the amount allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Antonio F. Aguirre (hereinafter petitioner) and Candace J. C. Aguirre, husband and wife, resided in Vista, *601 California, when they filed their petition in this case. They filed a 1979 joint Federal income tax return with the Internal Revenue Service. Petitioner is an electrician who was employed by the Bechtel Power Company at the San Onofre Nuclear Generating Station (hereinafter SONGS) from October 30, 1978 to June 1, 1979, and again from July 3, 1979 to October 1, 1982. Between June 11, 1979 and July 1, 1979, petitioner way employed by the Chula Vista Electric Company. The reason for petitioner's short-term employment with the Chula Vista Electric Company was not explained. During February 1974, Bechtel Power Company contracted with Southern California Edison to construct two nuclear reactor facilities, Units 2 and 3, at the SONGS site. Unit 2 was originally scheduled for completion in February 1980, approximately 64 months after construction began. Unit 3 was originally scheduled for completion in approximately May 1981, approximately 79 months after construction began. During construction the completion date of both units was periodically pushed forward, and neither unit was in fact completed until sometime in 1982. Throughout the construction period, Bechtel had substantial *602 labor requirements for electricians, among others. After completion of Unit 2 it was possible that workers would be reassingned to Unit 3. After both Units 2 and 3 were completed, Bechtel required trade employees to help fulfill its maintenance and repair duties under a maintenance contract on those units. When Bechtel needed trade employees, it contacted the appropriate union halls and placed an order with the dispatcher. The SONGS project was one of the largest projects for which the union had ever supplied workers. When it was necessary to reduce the number of trade employees, Bechtel's superintendent and his foreman determined which employees would be fired first based on their job performance. The least productive employees were laid off first and the most productive employees were laid off last. Seniority was not a factor in determining who would be laid off. A good worker could expect to have a job at the SONGS site for as long as work was available. Petitioner considered himself to be a good electrician. During 1979, petitioner received $3,066 in travel pay from Bechtel. This amount was provided pursuant to petitioner's employment contract with Bechtel, and all *603 electricians at SONGS received the same amount of travel pay regardless of where they resided. On his 1979 joint return, petitioner deducted $3,066 as an employee business expense incurred in traveling to the SONGS site. Respondent disallowed the claimed expense in its entirety. During 1979, petitioner also engaged in the rental of real estate. The record is very poorly developed with respect to petitioner's rental activity, but the following facts have been established. In August 1979, petitioner rented to third parties a house he owned in Spring Valley, California (hereinafter the Spring Valley property). During 1979, petitioner paid $1,551.90 in interest to the Wells Fargo Bank apparently with respect to a mortgage on the Spring Valley property. Petitioner also attributed $1,236.08 of the $2,966.60 Home Federal Savings interest paid on the property during the period it was rented and deducted it as a rental related expense on Supplemental Income Schedule (Schedule E). The remainder was apparently deducted as an itemized deduction on Schedule A - Itemized Deductions. In addition to the above stated amounts of interest, the following chart shows the amounts petitioner *604 paid to Wells Fargo during 1979 with respect to the Spring Valley property as described on a credit disclosure statement that accurately reflected the terms of petitioner's loan: Costs to Customer Not Part of Finance Charge (hereinafter Customer Charges) Recordation Fees
$ 10.00
Lender's Title Insurance Fee
172.75
Notary Fee
4.00
Credit Report Fee
20.00
Appraisal Fee
100.00
Sub Total
$306.75
Prepaid Finance Charge
Tax Service
$ 17.50
Reconveyance Fee
15.00
Loan Document Fee
75.00
Loan Fee (points)
259.00
Sub Total
$366.50
Total Charges
$673.25
On his 1979 joint Federal income tax return, petitioner claimed deductions of $3,796 [3] as interest and $306 [4] as legal expenses incurred with respect to the Spring Valley property. In the notice of deficiency, respondent disallowed $943 of the claimed interest expense on the ground that it represented nondeductible charges for services performed by the Wells Fargo Bank in connection with issuing the loan. Respondent also disallowed the claimed legal expense in its entirety. On brief, however, respondent conceded that $259 of the claimed interest expense paid as a loan fee (points) represented *605 prepaid interest income which is amortizable over the 179-month term of the loan. OPINION Issue 1: Travel Expense Deduction
The first issue for decision is whether expenses for lodging, meals, and travel were incurred by petitioner while he was "away from home" within the meaning of section 162(a)(2). As a general rule, deductions for personal expenses are disallowed under section 262. Section 162(a)(2), however, allows a taxpayer to deduct traveling expenses if he can establish that they were: (1) ordinary and necessary; (2) incurred while "away from home"; and (3) incurred in the pursuit of *606 a trade or business. Commissioner v. Flowers,326 U.S. 465, 470 (1946); Bochner v. Commissioner,67 T.C. 824, 827 (1977). This Court has consistently held that a taxpayer's "home" for purposes of section 162(a)(2) is the vicinity of his principal place of business or employment, and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Kroll v. Commissioner,49 T.C. 557, 561-562 (1968); Garlock v. Commissioner,34 T.C. 611, 614 (1960). An exception to this rule exists, however, where a taxpayer accepts employment away from his tax home which is temporary as opposed to indefinite. Peurifoy v. Commissioner,254 F. 2d 483, 486 (4th Cir. 1957), affd. 358 U.S. 59 (1958). Under this exception, the taxpayer's "tax home" does not shift to the vicinity of his temporary employment and, therefore, he is regarded as "away from home" while working at such location. Employment is temporary if its termination within a short period of time can be *607 foreseen. Mitchell v. Commissioner,supra;Albert v. Commissioner,13 T.C. 129, 131 (1949). Employment is indefinite if either its termination within a fixed or reasonably short period of time cannot be foreseen, Stricker v. Commissioner,54 T.C. 355, 361 (1970), affd. 438 F. 2d 1216 (6th Cir. 1971), or it continues for a substantial or indefinite duration. Garlock v. Commissioner,supra at 615. The burden of proving that his employment was temporary rests on the taxpayer. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The Court of Appeals for the Ninth Circuit, to which an appeal from this case would lie, has devised its own test for determining whether a taxpayer's "tax home" has shifted to his present place of employment. In Harvey v. Commissioner,283 F. 2d 491, 495 (9th Cir. 1960), revg. 32 T.C. 1368 (1959), the Court of Appeals stated that employment is indefinite "if there is a reasonable probability known to [the taxpayer] that he may be employed for a long period of time at his *608 new station. What constitutes 'a long period of time' varies with circumstances surrounding each case." [Emphasis in original.] Subsequent opinions by the Ninth Circuit on the same question reveal that its approach to the exception to the general "tax home" rule does not differ materially from the view of this Court. See Combs v. Commissioner,608 F. 2d 1269, 1274-1276 (9th Cir. 1979), affg. in part, revg. in part, and remanding in part 67 T.C. 426 (1976); Wills v. Commissioner,411 F. 2d 537, 541 (9th Cir. 1969), affg. 48 T.C. 308 (1967); Wright v. Hartsell,305 F. 2d 221, 224 (9th Cir. 1962), affg. 182 F. Supp. 725 (E.D. Idaho 1960). On this record, however, it is unnecessary to discuss what differences if any, exist between the two approaches because we conclude that under either the temporary-indefinite test of this Court or under the Harvey test, petitioner's employment at SONGS was not temporary. Petitioner worked at SONGS from October 30, 1978 to October 1, 1982, with only a one month break in service. The construction of Units 2 and 3 was one of the largest projects for which *609 petitioner's union and ever been asked to supply workers. From the start of construction in 1974 Bechtel knew that the project would last for more than 64 months, and periodically throughout the construction phase Bechtel extended the estimated completion date for both Units 2 and 3. The need for substantial numbers of electrical workers throughout this entire period was well documented.Under these circumstances, petitioner could reasonably anticipate that he would be employed on Unit 2 or 3 for an indefinite time. Therefore petitioner was not away from home while working at SONGS and the travel expenses he incurred were personal, nondeductible expenses. Stricker v. Commissioner,supra; section 262. See also Portillo v. Commissioner,T.C. Memo. 1982-518, which, with minor differences in detail, is factually indistinguishable from the instant case. Issue 2: Interest Expense and Legal Expenses
We must determine whether petitioner may deduct interest and legal expenses in excess of the amount allowed by respondent. Section 163(a) allows a deduction for all interest paid or accrued within the taxable year on indebtedness. Interest within *610 the contemplation of the statute is "compensation for the use or forbearance of money." Deputy v. du Pont,308 U.S. 488, 498 (1940). Fees paid for services performed by a lender in connection with a loan are not interest, but rather are capital expenditures which must be amortized over the term of the loan. Goodwin v. Commissioner,75 T.C. 424, 440-441 (1980), affd. without published opinion 691 F. 2d 490 (3rd Cir., 1982). Prepaid interest charges similarly must be amortized over the term of the loan, regardless of whether the taxpayer is on the cash or accrual basis of accounting. Zidanic v. Commissioner,79 T.C. 651 (1982); Lay v. Commissioner,69 T.C. 421, 432 (1977); James Bros. Coal Co. v. Commissioner,41 T.C. 917, 922 (1964); section 461(g). Petitioner bears the burden of proving that he is entitled to the interest deductions claimed on his return. Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.
At trial, petitioner proved that he expended $1,551.90 and $1,236.08 in interest allocable to the Spring Valley property. *611 The record also clearly establishes that $259 of the $366.50 "Prepaid Finance Charge" represented prepaid interest, while the remaining $107.50 represented lender fees for services performed in connection with the loan. In addition, the record clearly establishes that the $306.75 customer charges deducted by petitioner as a legal expense also constitute lender fees for services performed in connection with the loan. We find, therefore, that the customer charges and prepaid finance charges totaling $673.25 were expended for loan services and prepaid interest. Unlike interest, petitioner may not currently deduct these payments, although he may amortize them over the term of the loan regardless of whether he is a cash or accrual basis taxpayer. Goodwin v. Commissioner,supra;Zidanic v. Commissioner,supra;Lay v. Commissioner,supra; section 461(g). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. By consent of the parties, and because of a congruence of essential facts, respondent called one witness whose testimony was admitted in both this case and Adams v. Commissioner,T.C. Memo. 1984-67↩ which was decided on the same day as the instant case. 2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. The method by which petitioner calculated this figure was not explained, but it apparently includes among other things interest paid on the Wells Fargo and Home Federal Savings loans plus the $366.50 prepaid finance charge paid with respect to the Wells Fargo loan. The difference between the $3,796 deduction claimed on petitioner's return and the $3,154.48 in interest and prepaid interest paid to the Wells Fargo and Home Federal Savings was not explained. ↩
4. Petitioner apparently rounded down the $306.75 customer charges incurred with respect to the Wells Fargo loan.↩